FILED

October 6, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 2:20 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFRESSBORO

| | | |
|---|---|---|
| PAULA DUGGER, | ) | Docket No. 2015-05-0341 |
| **Employee,** | ) | |
| v. | ) | |
| | ) | |
| HOME HEALTH CARE OF | ) | State File No. 69225-2015 |
| MIDDLE TN, LLC, | ) | |
| **Employer,** | ) | |
| And | ) | |
| | ) | |
| UNITED HEARTLAND, | ) | **Judge Dale Tipps** |
| **Carrier.** | ) | |

## COMPENSATION HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on September 28, 2017, for a Compensation Hearing under Tennessee Code Annotated section 50-6-239 (2016). The central legal issues are: (1) the extent of Paula Dugger's permanent disability; and (2) whether Ms. Dugger is entitled to receive personal payment of medical expenses that her uninsured motorist insurance carrier paid. For the reasons set forth below, the Court holds that Ms. Dugger established by a preponderance of the evidence that she sustained a compensable mental injury resulting in permanent and total disability. Accordingly, the Court concludes that Ms. Dugger is entitled to medical benefits and permanent total disability benefits but she is not entitled to receive personal payment for medical expenses paid by the uninsured motorist carrier.

### History of Claim

*Stipulations*

The parties stipulated to the following: Ms. Dugger suffered compensable injuries in the course and scope of her employment as a Licensed Practical Nurse for Home Health Care of Middle TN, LLC (HHC) in a traffic accident on February 21, 2015. HHC paid temporary total disability benefits of $35,681.05 for the period of February 21, 2015,

1

through June 2, 2016, the date of maximum medical improvement (MMI). HHC also paid a sixty-day advance of permanent disability benefits of $4,047.00 from the MMI date through August 4, 2016. Ms. Dugger's compensation rate is $472.15.

*Ms. Dugger's Trial Testimony*

Ms. Dugger received her LPN license in 2003, and she has worked solely in nursing since then. In her current condition, she does not believe she can work as a nurse or in any other job. Ms. Dugger has constant back pain that extends into her left leg. She cannot stand for more than a few minutes at a time and is unable to walk very far. Sitting is also painful and causes spasms in her leg. She has a prescription for this problem, but it makes her very sleepy.

Ms. Dugger described difficulty with mental focus. She used to enjoy reading but no longer is able to finish a book. Ms. Dugger also suffers from severe migraines that can last two or three days. Although she had some prior problems with depression, she was always able to function and do her job, and her current symptoms are much more severe.

At the time of her accident, Ms. Dugger had an automobile policy with State Farm that included uninsured/underinsured motorist coverage with $250,000/$500,000 limits. The driver who caused the accident also had coverage with State Farm. Ms. Dugger, the other driver, and State Farm entered a mediated settlement agreement that provided State Farm would pay Ms. Dugger the other driver's policy limits of $50,000.00, as well as $125,000.00 under Ms. Dugger's own uninsured/underinsured motorist (UM) policy. The settlement agreement provided that State Farm would "waive any right of subrogation, reimbursement or offset for any payments made under its policy of insurance with [Ms. Dugger]."

Ms. Dugger paid out-of-pocket medical expenses totaling $3,891.61. She said, "as far as I know," State Farm paid other medical expenses under the medical pay provisions of her policy.

*Medical Records and Deposition Testimony*

Ms. Dugger received medical treatment from Dr. Louise Ledbetter, a neurologist, for "chronic persistent severe neck and back pain, and migraine headaches." Based on her examination and treatment of Ms. Dugger, as well as a neuropsychological evaluation by John Alden, Ph.D., Dr. Ledbetter assigned permanent impairment for traumatic brain injury because of alteration in mental status, cognition, and highest integrative function. Dr. Ledbetter said this alteration interfered with the ability to perform activities of daily living. She assigned additional permanent impairment for aphasia, migraines, depression, lumbar radiculopathy, and pain. Dr. Ledbetter indicated the total impairment for these

2

conditions is 47% to the whole person, and she testified that Ms. Dugger's injuries would prevent her from returning to her former employment.

*Vocational Expert Testimony*

Ms. Dugger's vocational expert, Patsy Bramlett, testified by deposition that she performed a vocational assessment of Ms. Dugger on March 7, 2017. She evaluated Ms. Dugger's educational and vocational history and concluded her relevant work history was made of up of skilled jobs in the "medium" physical demand category. Ms. Bramlett stated that Ms. Dugger is totally incapacitated from working at any job because of her injuries.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Ms. Dugger has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

*Medical Benefits*

Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A). Employers are also required to offer a panel of physicians "from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i).

Because HHC denied her claim, Ms. Dugger never received a panel of physicians. Her decision to seek treatment with her own doctors after the denial was reasonable. Further, she has treated for some time with Dr. Ledbetter and continues to do so, apparently with HHC authorizing payment for that treatment for the last several months. Therefore, the Court designates Dr. Ledbetter as Ms. Dugger's authorized treating physician for future treatment.

Ms. Dugger testified that she personally paid $3,891.61 in medical expenses because of her accident. HHC acknowledged during the hearing that it is obligated to reimburse Ms. Dugger for these out-of-pocket payments. The larger issue regarding

3

medical benefits arises from Ms. Dugger's request for payment of medical expenses previously paid by State Farm.

Ms. Dugger contended she is entitled to recover an additional $29,867.93, claiming State Farm paid medical bills in this amount pursuant to the "med-pay" provisions of her UM policy. In support of this claim, she offered copies of medical bills, billing summaries, health insurance claim forms, and explanation of review documents. HHC objected to the admissibility of these documents, and the Court took the objection under advisement.

Ms. Dugger relied on an unreported decision, *Carwile v. Compass Grp.*, No. W2001-03163-WC-R3-CV, 2003 Tenn. LEXIS 113 (Tenn. Workers' Comp. Panel Feb. 13, 2003), to argue that the expenses are admissible because HHC failed to provide the statutorily-required medical benefits. A close reading of *Carwile* does not support this argument. Instead, the Appeals Panel held that the presumption of reasonableness and necessity applies to medical bills incurred when an employer denies treatment. That is, it addressed the admissibility of the expenses themselves, not the manner in which the documentation of those expenses was introduced into evidence.

In this case, the documents in question are written statements, made by parties other than Ms. Dugger, offered to prove the truth of the matter asserted; namely, that she incurred medical bills totaling $29,867.93. Neither a records custodian nor a physician authenticated the documents. Further, Ms. Dugger did not identify any applicable hearsay exception,[1] and the Court is not aware of one. After careful consideration, the Court sustains the objection on the grounds that the proffered documents are inadmissible hearsay.[2] Similarly, the Court sustains HHC's hearsay objection to the medical expense "Payment Log," an unauthenticated document clearly prepared by someone other than Ms. Dugger.[3] As a result, Ms. Dugger failed to prove the amount of medical expenses paid by State Farm.

Even if Ms. Dugger had established the amount of her medical expenses and proven that State Farm paid them, she would not be entitled to receive direct payment for the claimed medical expenses. "An employee is not entitled to personally receive payment for medical expenses unless he or she personally paid the medical expenses and

---

[1] Counsel for Ms. Dugger admitted the bills are technically hearsay but said they support her testimony that she "incurred" these amounts.

[2] HHC also objected that Ms. Dugger failed to establish that the bills were reasonable and necessary. Because the Court is sustaining the hearsay objection, it need not address this question.

[3] HHC also objected to the Declarations Page and State Farm Car Policy. It contended that these documents were also hearsay, in part because the policy was not a certified copy. The Court overrules this objection but notes the documents are of very little significance because the Declarations Page is for a policy period other than the date of Ms. Dugger's accident and it does not indicate the applicable time period for the Policy.

is due reimbursement. Instead, employers must pay the providers of medical care directly for incurred medical expense." *Staggs v Nat'l Health Corp.*, 924 S.W.2d 79, 81 (Tenn. 1996); *see also State Auto. Mut. Ins. Co. v. Hurley*, 31 S.W.3d 562, 565 (Tenn. Workers' Comp. App. Panel 2000) (Tennessee Code Annotated section 50-6-204(a)(1) does not require the employer to pay the cost of medical treatment to the employee, unless the employee has personally incurred medical expenses).

Ms. Dugger contended *Staggs* does not apply in this case. Instead, she argued that State Farm's waiver of its right of reimbursement against Ms. Dugger operates as an equitable assignment of State Farm's recovery rights to her under the UM policy. In other words, she "steps into the shoes of State Farm and is entitled to recover the medical expenses from [HHC]."

The Court finds this argument unpersuasive. The settlement agreement in the tort claim made no mention of any assignment of rights. Rather, it merely provided that State Farm waived its right of subrogation, reimbursement or offset for any payments made under its policy. That is, State Farm agreed not to seek reimbursement for its medical payments *from Ms. Dugger*. It did not agree to waive its right to repayment from Ms. Dugger's medical providers in the event a court orders HHC's workers' compensation carrier to pay those providers for past treatment.

Ms. Dugger suggested that refusing her request would allow HHC to benefit from its denial of her claim because it would avoid payment of medical benefits it was obligated to provide. She argued HHC should not receive a windfall arising out of "its wrongful denial of compensability." This argument overlooks the fact that, just because HHC does not have to pay Ms. Dugger directly, it still must pay her medical providers for incurred expenses. HHC receives no windfall.

Because Ms. Dugger failed to establish the exact amount of past medical expenses, the Court cannot order HHC to pay a specific amount or award an attorney fee for recovery of unpaid medical benefits. However, under *Osborne v. Beacon Transp., LLC*, 2016 TN Wrk. Comp. App. Bd. LEXIS 49, at *10 (Sept. 27, 2016), HHC must still "fulfill its statutory obligations for the provision of medical benefits set forth in Tennessee Code Annotated, section 50-6-204" and pay Ms. Dugger's medical providers for any treatment causally related to her work accident.

*Permanent Disability Benefits*

Ms. Dugger seeks permanent total disability (PTD) benefits. Tennessee Code Annotated section 50-6-207(4)(B) provides: "When an injury not otherwise specifically provided for in this chapter totally incapacitates the employee from working at an occupation that brings the employee an income, the employee shall be considered totally disabled[.]" The assessment of permanent total disability is based upon numerous

5

factors, including the employee's skills and training, education, age, local job opportunities, and the capacity to work at the kinds of employment available in the employee's disabled condition. *Roberson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn. 1986). Although a rating of anatomical disability by a medical expert is a relevant factor, "the vocational disability is not restricted to the precise estimate of anatomical disability made by a medical witness." *Henson v. City of Lawrenceburg*, 851 S.W.2d 809, 812 (Tenn. 1993). In addition, the employee's "own assessment of [his] physical condition and resulting disability is competent testimony that should be considered[.]" *McIlvain v. Russell Stover Candies, Inc.*, 996 S.W.2d 179, 183 (Tenn. 1999).

Regarding this last factor, the Court notes that Ms. Dugger's testimony supports a conclusion that she is unable to work at any occupation. The Court observed Ms. Dugger's tearful, unfocused manner, as well as her apparent physical discomfort, and believes these to be genuine representations of her condition.

The Court also notes the unrebutted expert testimony of Dr. Ledbetter and Ms. Bramlett. Dr. Ledbetter testified that Ms. Dugger is unable to work because of her injuries, and Ms. Bramlett concluded that Ms. Dugger has a 100% loss of labor market access and earning capacity. Thus, the totality of the evidence supports a finding that Ms. Dugger is totally disabled.

HHC argued that PTD is inappropriate in this case because Ms. Bramlett found that Ms. Dugger's brain injury did not affect her cognitive abilities of reading, spelling, and math computation. Further, Ms. Bramlett agreed it was largely Ms. Dugger's lack of focus that prevented her from performing a sedentary job. Therefore, HHC contended Ms. Dugger would be able to do sedentary work if her focus issue were to resolve. The flaw with this argument is that HHC presented no evidence that Ms. Dugger's focus problem is not permanent. In the absence of any proof, this argument is mere speculation and an invitation for the Court to substitute its medical judgment for that of Dr. Ledbetter. The Court also notes that, in the event Ms. Dugger's condition improves, the statute provides an opportunity for HHC to revisit the issue of total disability. *See* Tenn. Code Ann. § 50-6-207(4)(C). The mere possibility of medical improvement is not a valid basis to deny PTD benefits.

Therefore, the Court holds the preponderance of the evidence, including all of the medical and expert vocational opinions, supports a finding that Ms. Dugger is permanently and totally disabled under the Workers' Compensation Law. She is therefore entitled to weekly benefits from June 3, 2016, the day after MMI,[4] "until [she] is, by age, eligible for full benefits in the Old Age Insurance Benefit Program under the

---

[4] "Permanent disability benefits, whether total or partial, begin accruing on the date that the employee attains maximum medical improvement." *Smith v. U.S. Pipe & Foundry Co.*, 14 S.W.3d 739, 745 (Tenn. 2000).

Social Security Act." *See* Tenn. Code Ann. § 50-6-207(4)(A)(i). HHC paid a sixty-day advance of permanent disability benefits of $4,047.00 from the date of MMI through August 4, 2016, and is entitled to set off this amount from PTD payments.

Finally, Ms. Dugger's counsel requested a twenty-percent attorney fee of the award. Before the Court can award an attorney fee in excess of $10,000.00, Tennessee Code Annotated section 50-6-226(a)(2)(C) requires specific findings of the factors set out in Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5, which include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) whether the fee agreement is in writing.

The Court finds this case required significant time and expertise on the part of Ms. Dugger's counsel. A fee of twenty percent is both statutorily authorized and customary in cases brought before this Court. Further, the amount is appropriate for successfully shepherding a complicated case through two years of litigation, including multiple appeals. All the applicable factors, including the experience and ability of Ms. Dugger's attorneys, militate in favor of the requested fee. Therefore, pursuant to Tennessee Code Annotated section 50-6-207(4)(A)(ii)(a) and section 50-6-207(4)(A)(iii), the Court commutes twenty percent of the first 450 weeks of permanent total disability benefits for Ms. Dugger's attorney for a fee of $42,493.50

Additionally, Tennessee Code Annotated section 50-6-207(4)(A)(ii)(c) provides:

> After the total amount of the commuted lump sum is determined, the amount of the weekly disability benefit shall be recalculated to distribute the total remaining permanent total benefits in equal weekly installments

beginning with the date of entry of the order and terminating on the date the employee's disability benefits terminate pursuant to subdivision (4)(A)(i).

Ms. Dugger will be eligible for full benefits in the Old Age Insurance Benefit Program on June 21, 2033. HHC paid a sixty-day advance of PTD for the period of June 2, 2016, (MMI date) through August 5, 2016. The period of August 5, 2016, to June 21, 2033, totals 880.71 weeks, which at the agreed compensation rate would total PTD benefits of $414,827.23. Reducing that amount by the attorney fee of $42,493.50 yields an adjusted total benefit of $372,333.73, which divided by 880.71 weeks equals an adjusted weekly compensation rate of $422.77. HHC shall pay Ms. Dugger's PTD disability benefits at this rate. It shall also pay accrued benefits for the period of August 5, 2016, through the date of this Order in a lump sum.

**IT IS, THEREFORE, ORDERED** as follows:

1. HHC shall fulfill its statutory obligations for the provision of medical benefits set forth in Tennessee Code Annotated section 50-6-204. This includes payment of any past medical expenses that are causally related to the February 21, 2015 injury. Ms. Dugger or the medical providers shall furnish medical bills to HHC or its workers' compensation carrier.

2. HHC shall pay Ms. Dugger $3,891.61 for reimbursement of her out-of-pocket medical expenses.

3. HHC shall continue to provide Ms. Dugger with medical treatment made reasonably necessary by the February 21, 2015 injury and in accordance with Tennessee Code Annotated section 50-6-204 (2016). Dr. Ledbetter shall be designated the authorized treating physician for any future care.

4. HHC shall pay Ms. Dugger permanent total disability benefits at the rate of $422.77 per week until she is eligible for full benefits under the Social Security Old Age Insurance Benefit Program. It shall pay accrued benefits for the period of August 5, 2016, through the date of this Order in a lump sum.

5. HHC shall pay Ms. Dugger an additional lump sum of $42,493.50, which her attorney is entitled to recover as a fee of twenty percent of her first 450 weeks of permanent total disability.

6. Costs of $150.00 are assessed against HHC pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.07, to be paid within five days of this Order becoming final.

7. HHC shall prepare and file a statistical data form within ten business days of the

date of this Order, pursuant to Tennessee Code Annotated section 50-6-244.

**ENTERED THE 6TH OF OCTOBER, 2017**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**


## APPENDIX

Exhibits:

1. Transcript of Dr. Louise Ledbetter's deposition
2. Transcript of Patsy Bramlett's deposition
3. Wage Statement
4. Stipulation of the Parties
5. Collective medical expenses (identification only)
6. Medical Payment Itemization (identification only)
7. State Farm declarations page and policy
8. Mediation Settlement Agreement
9. Itemization of Ms. Dugger's medical expense payments
10. Pharmacy expense records

Technical Record:

1. Petition for Benefit Determination
2. Post-Discovery Dispute Certification Notice
3. Parties' Exhibit and Witness Lists
4. Parties' Pre-Compensation Hearing Statements
5. Parties' Pretrial and Supplemental Briefs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Order was sent to the following recipients by the following methods of service on this the 6th day of October, 2017.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| Richard Matthews | | X | Rmatthews95@aol.com |
| Gordon Aulgur | | X | Gordon.aulgur@accidentfund.com |


_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov