Robert BURRIS, Plaintiff–Appellee,

v.

CROSS MOUNTAIN COAL COMPANY,
Defendant–Appellee,

and

Sue Ann Head, Director of the Division of
Workers' Compensation, Tennessee De-
partment of Labor, Second Injury
Fund, Defendant–Appellant.

Supreme Court of Tennessee,
at Knoxville.

Nov. 5, 1990.

David H. Dunaway, Dunaway, Dunaway
& Van Hook, LaFollette, for appellee Bur-
ris.

Timothy Joe Walker, Reese, Lang &
Breeding, London, Ky., for appellee Cross
Mountain Coal Co.

Charles W. Burson, Atty. Gen. & Report-
er, Dianne Stamey Dycus, Asst. Atty. Gen.,
Nashville, for appellant Second Injury
Fund.

## OPINION

DROWOTA, Justice.

This is an appeal by the Tennessee De-
partment of Labor, Second Injury Fund,
Defendant–Appellant, from a judgment of
the Chancery Court of Campbell County
ordering the Second Injury Fund to pay
70% of the benefits due to the employee,
Robert Burris, Plaintiff–Appellee, who was
determined to be totally and permanently
disabled. The issues are (1) whether the
Chancellor erred under T.C.A. § 50–6–208

in apportioning the award of 70% to the Second Injury Fund and 30% to the employer, Cross Mountain Coal Company ("Cross Mountain") and (2) whether a lump sum award was appropriate.

Mr. Burris is a coal miner. In April 1986, he sustained a back injury after being struck by a falling rock. This injury necessitated surgery to relieve numbness in his arm. Cross Mountain, the employer, entered into a settlement with Mr. Burris paying him benefits equivalent to 30% permanent disability to the body as a whole in addition to temporary total disability and past and future medical expenses. This settlement was judicially approved as required by T.C.A. § 50–6–206.

Mr. Burris remained an employee of Cross Mountain and returned to work in its mines after being released by his physician. On February 2, 1988, Mr. Burris injured his back a second time while pulling on a mining cable. He underwent surgery to remove a herniated disc. This workers' compensation action against Cross Mountain and the Second Injury Fund resulted. The trial court determined that, as a result of the second injury, Mr. Burris was permanently and totally disabled. A lump sum award was ordered and apportioned 30% to the employer and 70% to the Second Injury Fund. This appeal by the Second Injury Fund followed.

I.

■ The Second Injury Fund does not dispute the finding of the trial court that Mr. Burris is totally and permanently disabled. Rather, the crux of the litigation is the apportionment of benefits between the employer and the Second Injury Fund. In this regard, the focus is upon the Second Injury Fund Statute, T.C.A. § 50–6–208, which provides in pertinent part:

(a) If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, he shall be entitled to compensation from his employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which the employee may be entitled under this chapter from the employer or the employer's insurance company; provided, however, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the "second injury fund" therein created. To receive benefits from the second injury fund, the injured employee must be the employee of an employer who has properly insured his workers' compensation liability or has qualified to operate under the Tennessee Workers' Compensation Law as a self-insurer, and the employer must establish that the employer had actual knowledge of the permanent and preexisting disability at the time that the employee was hired or at the time that the employee was retained in employment after the employer acquired such knowledge but in all cases prior to the subsequent injury. In determining the percentage of disability for which the second injury fund shall be liable, no previous physical impairment shall be considered unless such impairment was within the knowledge of the employer as prescribed above. Nothing in this section shall be construed to limit the employer's liability as provided by law for aggravation of preexisting conditions or disabilities in cases where recovery against the second injury fund is not applicable.

(b)(1) In cases where the injured employee has received or will receive a workers' compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess

of one hundred percent (100%) permanent disability to the body as a whole, after combining awards. Benefits which may be due the employee for permanent disability to the body as a whole in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards, shall be paid by the second injury fund. It is the intention of the legislature that once an employee receives an award or awards for permanent disability to the body as a whole, and such awards total one hundred percent (100%) permanent disability, any permanent disability compensation due for subsequent compensable injuries to the body as a whole shall be paid by the second injury fund, instead of by the employer.

The Second Injury Fund takes the position that since the employee had a prior workers' compensation award for permanent disability to the body as a whole (30%) and the combination of the awards exceeds 100%, the trial court erred in failing to treat this case as a subsection (b) case. Thus, according to the Second Injury Fund, the proper analysis is to combine the prior and subsequent awards and then impose liability on the Fund for the amount that exceeds 100%. That is, the 30% permanent disability resulting from the 1986 injury should have been added to the 100% award stemming from the February 1988 injury and the Fund held responsible for that portion exceeding 100%, which is 30%. Both the employer and the employee maintain that the trial court was correct in viewing this as a subsection (a) case because Mr. Burris was found to be permanently and totally disabled after the subsequent injury, a requirement of subsection (a) but not subsection (b).

Reduced to its essentials, subsection (a) provides that if the employee has a preexisting permanent physical impairment from any cause or origin, and is then subsequently permanently and totally disabled in a compensable accident, the employer is liable only for the disability that would have resulted from the subsequent injury without consideration of the first. The Second Injury Fund thus pays the differ-

ence between the amount received by the injured employee from the employer for the second injury, and the amount to which he would be entitled in order to be compensated for the permanent total disability. Subsection (a) applies whether or not the prior permanent disability was work-related or compensated under workers' compensation laws. Subsection (a) also requires the employer to have had actual knowledge of the preexisting permanent physical disability prior to the subsequent injury.

Subsection (b), unlike subsection (a), contains no knowledge requirement. *Sitz v. Goodyear Truck Tire Center*, 762 S.W.2d 886, 887 (Tenn.1988) (Drowota dissenting). Under its own terms, subsection (b) applies when an employee has received or will receive a workers' compensation award or awards for permanent disability to the body as a whole *and* the combination of the awards equals or exceeds 100% permanent disability to the body as a whole. When this occurs, the awards are combined and the Second Injury Fund liable for benefits due to the employee in excess of 100%. In *Sitz*, it was noted:

"[T]he legislature specifically stated its intent in broadening the liability of the Second Injury Fund in subsection (b)—it is (1) to limit the exposure of any and all employers of a worker, throughout the worker's productive life, for payment of workers' compensation benefits to a sum total of one hundred percent for permanent disability to the body as a whole, and (2) to insure that the worker loses no benefits by making the Second Injury Fund liable for payment of benefits in the percentage that the total workers' compensation awards for disability to the body as a whole exceeds 100 percent."

*Sitz* at 887.

Regardless of the employee's history concerning work-related injuries, the employer will only be responsible for the employee's first 100% workers' compensation disability to the body as a whole and the Second Injury Fund will be responsible for any benefits in excess thereof. This is

consistent with the basic purpose of the Second Injury Fund to encourage the employment of persons with permanent physical disability by limiting to some extent the employer's workers' compensation liability. *Brown v. John Martin Construction Co.*, 642 S.W.2d 145, 147 (Tenn.1982); *Arnold v. Tyson Foods, Inc.*, 614 S.W.2d 43, 44 (Tenn.1981); *U.S. Pipe & Foundry Co. v. Caraway*, 546 S.W.2d 215, 219 (Tenn.1977); *E.I. du Pont de Nemours & Co. v. Friar*, 218 Tenn. 554, 404 S.W.2d 518, 521 (1966). Limiting the exposure of the employer to the immediate consequences of the second injury encourages the employment of handicapped persons. *Wiseman v. E'Con Mills, Inc.*, 517 S.W.2d 191, 193 (Tenn.1974). In this regard, the following legislative history is pertinent:

> "The Second Injury Fund is opened up so that an employee who has had a 100% disability from a previous injury that has been rehabilitated and goes back on the job can then if he is injured go into the Second Injury Fund and get his recovery. This encourages the employer to hire people who have been previously injured so that they are not going to be worried about having to pay for an employee who has a problem and if he gets hurt they'll end up paying for his old injury. This protects him if that other employee got a 100% disability." [1]

Remarks of Senator Riley C. Darnell, Senate Sponsor of the Act, May 2, 1985. Tape S–94, State Library and Archives.

In view of the foregoing principles, we are persuaded that the trial court should have applied subsection (b) to the facts presented here. The predicate for this assertion is that Mr. Burris had received a prior workers' compensation award of 30% permanent disability to the body as a whole for the prior injury while employed by Cross Mountain and the combination of both awards equals 130% permanent disability to the body as a whole. Therefore, the liability of the Second Injury Fund should be 30% pursuant to subsection (b) as this represents the excess over 100%. The situation presented here satisfies both requirements of subsection (b)—(1) there was a prior workers' compensation award for permanent disability to the body as a whole and (2) the combination of the awards equals or exceeds 100% permanent disability to the body as a whole. If Mr. Burris' prior disability was not due to a previous compensable injury for which he received an award of workers' compensation, he would still have been eligible for benefits from the Second Injury Fund under subsection (a) to the extent which the previous disability contributed to his "total" disability. Had that been the case, the trial court would have had to determine the extent to which the prior disability contributed to the total disability. As it is, however, there had already been a prior judicial determination regarding the extent of permanent impairment to the body as a whole and an award of workers' compensation. This is what makes this a subsection (b) case. The application of subsection (b) under the facts and in the manner suggested here has been implicitly approved by this Court on a previous occasion. *See, Sitz v. Goodyear Truck Tire Center*, 762 S.W.2d 886 (Tenn. 1988).

The employer maintains that *Smith v. Liberty Ins. Co.*, 762 S.W.2d 883 (Tenn. 1988), is consistent with the trial court's disposition regarding apportionment. In *Smith*, the employee received workers' compensation benefits based on an 18% permanent partial disability, and in a subsequent suit against the same employer was adjudicated to be 100% disabled, with the employer liable for 40% of the disability and the Second Injury Fund liable for 60%. Reliance by the employer on this case is misplaced. The reason, simply stated, is that the apportionment was not challenged

---

**1.** Nothing precludes an employee adjudged 100% permanently disabled from resuming employment if he or she is sufficiently rehabilitated. Rehabilitation "refers to an employee's hav-

ing the ability and willpower to return to work and to demonstrate the existence of substantial earning capacity despite his or her previous

on appeal and, accordingly, not passed upon in direct fashion by this Court.[2] Appellees concede as much.

■ The argument is also advanced that the trial court in the second proceeding is not bound by the prior judicial determination regarding the extent of disability of the prior injury for the purposes of apportionment under subsection (b). Were we to adopt such a rule, the extent of disability resulting from prior injuries would invariably be relitigated in subsequent proceedings. Concerns for judicial economy and finality of settlements in this context persuade us not to follow this approach as suggested by the employer. Moreover, there is an equitable concern about permitting an employer to settle a case for some specified amount when it is convenient to do so (and seek the trial court's approval of it as being fair to the employee) and then later argue that the prior disability was really considerably greater than that settled for simply in an effort to reduce its own liability under the Second Injury Fund Statute.

Accordingly, we hold that where there has been a previous award of workers' compensation for permanent disability to the body as a whole and the combined awards equal or exceed 100%, subsection (b) applies. If either one of these requirements is lacking, subsection (a) is to be applied provided the employee becomes permanently and totally disabled by virtue of the subsequent injury and the knowledge requirement is satisfied. Therefore, the Second Injury Fund in this case is liable for 30% as opposed to 70% as ordered by the court below.

## II.

The second issue in this case is whether it was proper to award benefits in a lump sum. The trial court found that the employee had established a special need to purchase a residence.

■ The purpose of workers' compensation is to provide injured workers with periodic payments which are a substitute for regular wages. *Van Hooser v. Mueller Co.*, 741 S.W.2d 329, 330 (Tenn.1987). Lump sum awards are an authorized exception to this purpose and therefore are not to be awarded as a matter of course. *Bailey v. Liberty Mut. Ins. Co.*, 766 S.W.2d 496, 498 (Tenn.1989). Under the Tennessee workers' compensation scheme, awards of compensation which are payable periodically may be commuted to one or more lump sum payments. T.C.A. § 50–6–229(a).[3] Demonstrating an adequate need for housing can justify commuting an award into a lump sum that would otherwise be paid weekly. *Kelley v. 3–M Co.*, 639 S.W.2d 437 (Tenn.1982).

We conclude that the trial court did not abuse his discretion in awarding a lump sum commutation. Mr. Burris testified that he lived with his parents and that if something happened to them he would not have a place to live. He also stated that he needed a place for his children when they visited him and that living with his parents created problems when visitation was exercised.

In view of the foregoing, we reverse the trial court's judgment insofar as it relates to the apportionment between the employer and the Second Injury Fund, but affirm in all other respects. The costs incident to this appeal shall be split evenly between the Appellees.

permanent total disability." *Allkins v. Thomas Furniture Co.*, 762 S.W.2d 557, 560 (Tenn.1988).

**2.** In *Smith v. Liberty Ins. Co.*, this Court was dealing with the sole issue of whether an employee could recover temporary total disability benefits and permanent total disability benefits in excess of the statutory maximum (400 weeks). We held the employee was limited to the "maximum total benefit" limitation of T.C.A. § 50–6–102(a)(7).

**3.** We note parenthetically that in 1990, this provision was amended by the Legislature to include the following language: "In determining whether to commute an award, the trial court shall consider whether the commutation will be in the best interest of the employee, and such court shall also consider the ability of the employee to wisely manage and control the commuted award irrespective of whether there exists special needs." This new standard was not applied by the trial judge in this case.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.