James D. HENSON, Plaintiff–Appellee,

v.

CITY OF LAWRENCEBURG, Ivan Johnston, Mayor, and W.O. Smith, Superintendent, TML Risk Management Pool Claims, Defendants–Appellants,

and

Sue Ann Head, Director of the Division of Workers' Compensation of the State of Tennessee, Defendant–Appellee.

Supreme Court of Tennessee,
at Nashville.

March 29, 1993.

**810**

James A. Hopper, Hopper & Plunk, P.C., Savannah, for appellants.

Jerry W. Wallace, Parsons, for appellee, James Henson.

Charles W. Burson, Atty. Gen. & Reporter, Dianne Stamey Dycus, Asst. Atty. Gen., Nashville, for appellee, Second Injury Fund.

## OPINION

ANDERSON, Justice.

In this workers' compensation action, the trial court awarded the worker 100 percent total disability benefits for a work-related back injury. The responsibility for the judgment was divided on the basis of 45 percent to the employer and 55 percent to the State Second Injury Fund, and it was commuted to a partial lump-sum. On appeal, the employer contends that its apportioned share was excessive. The Second Injury Fund argues that assessing any part of the award against it was error, since the evidence preponderates against a finding of total disability. Even if the disability was total, the Fund contends the award does not exceed 100 percent because prior scheduled-member injury awards are not "to the body as a whole" and may not be added to the present award. Both parties argue that the trial court erred in granting the partial lump-sum award. Our review of the record demonstrates that the evidence does preponderate against the trial court's finding of 100 percent permanent and total disability, and in favor of an award of 75 percent permanent partial disability. We also conclude that the legislative intent and purpose of the Second Injury Fund Statute [1]—the employment of the handicapped—is furthered by equating prior scheduled-member awards to a percentage of the body as a whole. Because the prior

---

1. Tenn.Code Ann. § 50–6–208((b)(1) (1991).

scheduled-member workers' compensation awards equate to 28 percent of the body as a whole, and the total, when added to the present permanent partial award, exceeds 100 percent, the employer is responsible for 72 percent of the award and the Second Injury Fund is responsible for 3 percent of the award. We have also determined that the trial court erred in granting the partial lump-sum award.

## FACTUAL BACKGROUND

On August 10, 1989, the plaintiff, James Henson, while employed by the defendant, City of Lawrenceburg, injured his back sweeping and shoveling debris from a city street. The injury was originally diagnosed as a lumbar sprain. Because the pain and discomfort continued, Henson, in March of 1990, consulted Dr. Bennett Blumenkopf, a neurological surgeon at Vanderbilt, who concluded that Henson was suffering from a herniated thoracic disc. The disc was surgically repaired as a result.

Because of a dispute as to the disability and the parties' responsibilities, this action was filed. Dr. Blumenkopf testified, by deposition, that Henson had continued to complain of pain following the surgery, but had no objective deficits, and, therefore, was assigned a 5 percent medical impairment rating. He was released to return to work with a 25–pound lifting restriction. When Henson continued to complain of pain, Dr. Blumenkopf referred him to the Vanderbilt Ability Assessment Center. The Center performed an evaluation and assessed a medical impairment rating of 11 percent and a 55 percent vocational disability. Henson was limited to light work activities which do not involve crouching, kneeling, squatting, climbing or lifting over 20 pounds. The Center's report provided examples of jobs which would not involve the restricted activities, including security guard, assembler, exterminator, order caller, auction assistant, and outside deliverer. Dr. Blumenkopf stated that he did not disagree with the higher rating because it included orthopedic impairment in addition to neurologic impairment.

The only issue disputed at trial was the existence and extent of permanent disability. Henson, 52 years old, testified that he did not complete high school but obtained his GED in 1960, and had worked as a truck driver, heavy equipment operator, and asphalt plant operator most of his adult life. He stated that he had suffered from a variety of illnesses that were not work-related, but presented no expert medical proof of any permanent disability as a result of those illnesses. He further testified that before the back injury in 1989, he was able to hold down a job, but since that time he has not returned to work, and can no longer use a lawnmower, weedeater or garden tiller. On cross-examination, he admitted that he is able to drive his pick-up truck.

The parties stipulated that Henson had been involved in two prior workers' compensation claims that resulted in settlement awards of 20 percent disability to the left knee and 50 percent disability to the left leg. The parties also stipulated that the two prior injuries to the left lower extremity "related" to 28 percent to the body as a whole under the AMA guidelines.

Based on the foregoing evidence, the trial judge found Henson to be 100 percent totally and permanently disabled. The City of Lawrenceburg was ordered to pay 45 percent of the award, and the Second Injury Fund of the Department of Labor was ordered to pay 55 percent.

On plaintiff's motion to commute the award to lump sum, Henson and his wife testified that they were seeking the lump-sum amount to pay in full all of their outstanding debts, including first and second home mortgages, two automobile loans, and two loans taken out to meet daily living expenses. In addition to the debts, the Hensons testified that they intended to use the money to pay for repair work to their home, which was estimated to be $1,860.00. Both testified that they had no problems managing money. On cross-examination, Mrs. Henson stated that the temporary total benefits, together with the permanent disability benefits accrued at the time of trial ($24,310.00), would be suf-

ficient to allow the couple to catch up on the delinquent loan payments and pay for the needed repairs to their home. The record shows the total of all loans for living expenses, including the second mortgage and accrued medical bills, was approximately $10,500.00. The trial court granted a partial lump-sum award of $46,000.00 [2].

## PERMANENT DISABILITY AWARD

■ Our review of findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (1991 & Supp.1992); *Lollar v. Wal–Mart Stores, Inc.*, 767 S.W.2d 143 (Tenn.1989). "This standard differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases." *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987).

■ The Second Injury Fund contends that the evidence preponderates against the trial court's finding that Henson is 100 percent totally and permanently disabled. The extent of vocational disability is a question of fact to be determined from all of the evidence, including lay and expert testimony. *Worthington v. Modine Mfg. Co.*, 798 S.W.2d 232, 234 (Tenn.1990). "The assessment of permanent . . . disability is based upon numerous factors, including the employee's skills and training, education, age, local job opportunities, and his capacity to work at the kinds of employment available in his disabled condition." *Robertson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn.1986). A medical expert's rating of anatomical disability is also one of the relevant factors, but the vocational disability is not restricted to the precise estimate of anatomical disability made by a medical witness. *Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452,

458 (Tenn.1988). Further, this Court is able to make its own independent assessment of the medical proof to determine where the preponderance of the evidence lies when the medical testimony is presented by deposition as it was in this case. *Landers v. Fireman's Fund Ins. Co.*, 775 S.W.2d 355, 356 (Tenn.1989).

■ The record demonstrates that Henson is a 52 year-old man who has a GED diploma and substantial experience as a truck driver, heavy equipment operator, and an asphalt plant operator. The lay testimony from Henson and his wife indicates that although he can drive a truck, he is now unable to return to his former job, or perform yard work he had engaged in before the injury. Both the lay and expert medical testimony indicate that Henson is still capable of performing light work activities.

Accordingly, we conclude that the evidence preponderates against the trial court's finding of 100 percent total permanent disability, and modify the award of benefits to 75 percent permanent partial disability to the body as a whole.

## SECOND INJURY FUND LIABILITY

■ Given this permanent partial disability finding, we now consider whether the Second Injury Fund is liable for any portion of the award under the Second Injury Fund Statute. Henson argues that the Second Injury Fund is liable for a portion of the award under Tenn.Code Ann. § 50–6–208(b)(1) (1991). In summary, the statute provides that when an employee has received or will receive a workers' compensation award or awards for permanent disability to the *body as a whole*, and the combination of the awards equals or exceeds 100 percent permanent disability to the body as a whole, the awards are combined. The Second Injury Fund then becomes liable for any benefits due the employee in excess of 100 percent. *Id.; see also Burris v. Cross Mountain Coal Co.*, 798 S.W.2d 746, 748 (Tenn.1990).

---

**2.** This amount included $10,623.08 temporary total benefits, and $13,687.43 which was permanent disability that had accrued from August 10, 1990 through November 22, 1991, the date of the trial court's order.

■ Here, the employee has received two prior workers' compensation awards, both involving a scheduled member—the left lower extremity. The parties stipulated that the prior awards of 20 percent to the left knee and 50 percent to the left leg equate to a 28 percent disability to the body as a whole under the AMA guidelines. If the prior awards are combined with the award of 75 percent to the body as a whole announced by our holding today, the total disability exceeds 100 percent to the body as a whole, and the Second Injury Fund is liable for the excess of 3 percent. Despite the stipulation, the Second Injury Fund argues that the prior scheduled-member awards may not be treated as an award to the body as a whole for subsection (b) purposes.

■ Both the language of the statute and the legislative history clearly demonstrate that the overriding purpose of the Second Injury Fund statute is to encourage the employment of persons with a previous permanent physical disability by limiting the employer's workers' compensation liability. *See Burris,* 798 S.W.2d at 749; *see also Brown v. John Martin Const. Co.,* 642 S.W.2d 145, 147 (Tenn.1982); *Arnold v. Tyson Foods, Inc.,* 614 S.W.2d 43, 44 (Tenn.1981). Professor Larson reinforces that conclusion in his discussion of the policy underlying second injury fund statutes: "The primary policy of the legislation is well understood; it is to remove the competitive employment disadvantage suffered as a result of compensation law by handicapped workers...." 2 A. Larson, *The Law of Workmen's Compensation* § 59.32 (1992).

■ At the risk of stating the obvious, a handicapped person is no less handicapped by a scheduled-member injury than by an equivalent injury to the body as a whole. It is also axiomatic that with either injury, the desirability and need for employment is just as great. We see no logical reason for a distinction between a scheduled-member injury and a body-as-a-whole injury in the accomplishment of the statute's objectives. The goal of the statute—the employment of the handicapped—is furthered by limiting the employer's liability to the consequences of the second injury only. *See Burris,* 798 S.W.2d at 749; *Wiseman v. E'Con Mills, Inc.,* 517 S.W.2d 191, 193 (Tenn.1974).

We are, therefore, persuaded that in the limited context of determining the liability of the Second Injury Fund, the statute's purpose is accomplished by equating a prior scheduled-member award to a percentage of the body as a whole by reference to the AMA guidelines, and that the legislature must have so intended. To conclude otherwise would thwart the statute's purpose. Accordingly, we have determined that the Second Injury Fund is liable for 3 percent of the award, which is the amount that exceeds 100 percent after combining the prior awards of 28 percent and the present award of 75 percent.

Finally, the Second Injury Fund argues, based upon the provisions of Rule 54.04(1) of the Tennessee Rules of Civil Procedure, that the trial court lacked authority to assess costs against it. We conclude that contention is without merit. *Reagan v. American Policyholders Ins.,* 842 S.W.2d 249, 251 (Tenn.1992).

### LUMP–SUM AWARD

■ The defendant, City of Lawrenceburg, next argues that the court erred in awarding Henson a partial lump-sum award. In determining whether to commute an award to lump-sum, "the trial court shall consider whether the commutation will be in the best interest of the employee, and such court shall also consider the ability of the employee to wisely manage and control the commuted award, irrespective of whether there exists special needs." Tenn.Code Ann. § 50–6–229(a) (1991 & Supp.1992). This statute vests discretion in the trial court to permit or refuse lump-sum commutation. *Bailey v. Colonial Freight Sys., Inc.,* 836 S.W.2d 554, 557 (Tenn.1992); *Fowler v. Consolidated Aluminum Corp.,* 665 S.W.2d 713, 714 (Tenn. 1984). However, "the discretion thus vested in the trial judge is not absolute but is a judicial one which is reviewable in the appellate courts and may be reversed if the

appellate court finds that the decision of the trial court was an abuse of judicial discretion." *Bailey*, 836 S.W.2d at 557, quoting *State v. Grear*, 568 S.W.2d 285, 286 (Tenn.1978).

The purpose of workers' compensation is to provide injured workers with periodic payments which are a substitute for regular wages. *Burris*, 798 S.W.2d at 746. Lump-sum awards are an exception to the general purposes of our workers' compensation law, and as such, commutation should occur only in exceptional circumstances, and not as a matter of course. *See e.g., Bailey*, 836 S.W.2d at 557; *Williams v. Delvan Delta, Inc.*, 753 S.W.2d 344, 349 (Tenn.1988); *Van Hooser v. Mueller Co.*, 741 S.W.2d 329, 339 (Tenn. 1987).

This Court has approved lump-sum awards for the purpose of allowing an injured employee to purchase a home. *See Harness v. CNA Ins. Co.*, 814 S.W.2d 733 (Tenn.1991); *Clark v. National Union Fire Ins. Co.*, 774 S.W.2d 586 (Tenn.1989). We have also stated that the relevance of commutation to the rehabilitation of the worker seeking a lump-sum award is another factor effecting the "best interest" inquiry. *Bailey*, 836 S.W.2d at 558; *North American Royalties v. Thrasher*, 817 S.W.2d 308, 311 (Tenn.1991).

The only proof offered in this case that the partial lump-sum award is in the employee's best interest is that he wants to pay all of his outstanding debts in full, and make some repairs to his home. However, Henson's wife testified that the temporary total benefits, together with the permanent disability benefits accrued at the time of trial ($24,310.00), would be sufficient to cover any delinquent loan payments, as well as pay for the needed repairs on the home. The record shows that approximately $12,000.00 is sufficient for this purpose. We do not think, in view of this proof, that the partial lump-sum award of $46,000.00 was in the employee's best interest. Again, we reiterate that commutation should "be restricted to those exceptional cases in which it can be demonstrated that the purpose of the [Workers' Compensa-

tion] Act will best be served by a lump-sum award." *North American Royalties*, 817 S.W.2d at 311, quoting 3 A. Larson, *Workmen's Compensation Law* § 82:71. Therefore, we find the trial court erred in granting the partial lump-sum award.

## CONCLUSION

Accordingly, the trial court judgment is modified to award 75 percent permanent partial disability benefits to the plaintiff. The defendant, City of Lawrenceburg, is responsible for 72 percent of the judgment, and the defendant, Second Injury Fund, is responsible for 3 percent of the judgment. The judgment is reversed as to the partial lump-sum award. The case is remanded for further proceedings in conformity with this opinion, including the adjustment of the attorney's fee. The costs of this appeal are taxed to the defendant-appellant, City of Lawrenceburg.

REID, C.J., and DROWOTA and O'BRIEN, JJ., concur.

DAUGHTREY, J., not participating.