

FILED

**July 10, 2018**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 4:00 P.M. EASTERN

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT GRAY

| | | |
|---|---|---|
| **JAMES HUGHES,** | ) | **Docket No.: 2017-02-0604** |
| **Employee,** | ) | |
| **v.** | ) | |
| **KENNAMETAL, INC.,** | ) | **State File No.: 44387-2016** |
| **Employer,** | ) | |
| **And** | ) | |
| **SENTRY INSURANCE COMPANY,** | ) | **Judge Lisa A. Lowe** |
| **Carrier.** | ) | |

---

### COMPENSATION HEARING ORDER

---

This matter came before the Court for a Compensation Hearing on June 12, 2018. The parties stipulated that Mr. Hughes sustained a work-related lung injury on June 13, 2016. The issue is permanent disability benefits and whether Mr. Hughes is limited to recovering his original award or is entitled to permanent total disability benefits.[1] For the reasons below, this Court finds that Mr. Hughes established by a preponderance of the evidence that he is only entitled to his original award.

### History of Claim

Kennametal employed Mr. Hughes as a coding operator. On June 13, 2016, while changing gases, gas containing hydrogen chloride escaped from the system and sprayed Mr. Hughes' face. Because he inhaled hydrogen chloride, he went to the emergency room, was admitted to the hospital, and remained in the intensive care unit for three days.

The authorized physician, Dr. Jeff Farrow, placed Mr. Hughes at maximum medical

---

[1] The parties stipulated that Mr. Hughes' initial compensation period expired after the Compensation Hearing on June 19, 2018. Since the compensation period had not expired at the time of the hearing and Kennametal would not stipulate that he would not be working for any employer on June 19, the Court is unable to address Mr. Hughes' entitlement to enhancement factors and/or extraordinary relief. The parties agreed he has until June 19, 2019, to pursue a claim for increased benefits and/or extraordinary relief.

1

improvement (MMI) on September 22, 2016, and he assigned a permanent impairment rating of 20% percent and permanent restrictions of an environment free of excessive heat and/or chemicals.

Initially, Dr. Farrow prepared a September 27, 2016 letter stating Mr. Hughes had significant limitations precluding him from seeking gainful employment in an exertional activity job and that he should pursue a sedentary job in a clear air environment with no extreme temperatures. Mr. Hughes attempted to return to work but had some breathing difficulties. On November 7, Dr. Farrow wrote a letter clarifying that he recommended a working temperature ranging from 68-72 degrees. He also noted, "it's my understanding getting to and from his workstation is a problem, as he has to walk through areas of poor air quality. If accommodations could be made, this would be of great benefit to him." On November 17, Dr. Farrow wrote that it was his advice that Mr. Hughes choose a different profession rather than returning to work at Kennametal. During his deposition, Dr. Farrow explained the restrictions: "We talked about finding some other option for him, that he could pursue gainful employment. Because of his exposure to that environment [Kennametal] was clearly keeping him sick, if not making him worse." Dr. Farrow also mentioned that Mr. Hughes might have problems around smoke, perfume, and colognes.

### Mr. and Mrs. Hughes' Testimony

Mr. Hughes testified that he has a special education diploma. He is unable to read or perform math because he has dyslexia. Mr. Hughes explained that his activities are severely restricted because of his temperature limitations, and he has difficulty breathing when exposed to perfumes or colognes. He stated that when he attempted to return to work at Kennametal, walking through the plant to get to the office area caused him breathing difficulties. Mr. Hughes used his rescue inhaler several times and his nebulizer to administer a breathing treatment during a break. He had to stay in bed the next day.

Mr. Hughes testified he is restricted to bed for two to three days due to breathing difficulties if exposed to extreme temperatures, dust, or perfume/cologne. He further stated he has not looked for other work and could not maintain a job, since his attendance would be unreliable because he never knows when his breathing condition will restrict his functioning or he will encounter someone wearing perfume/cologne. To determine if he could work in retail, Mr. Hughes tried to operate the cash register at the pharmacy where his wife works, but he was unsuccessful due to his dyslexia.

Mrs. Hughes testified her husband wanted to return to work, but he had to stay in bed after attempting to do so. She checks the air quality alerts daily to determine whether he can go outside. Mrs. Hughes verified Mr. Hughes' difficulties with reading and writing, and that he was unsuccessful in his attempt to operate a cash register. Mrs. Hughes also said his health has not improved since the accident, and he has more bad days than good.

*Vocational Experts' Testimony*

Dr. Hankins performed a vocational evaluation. He interviewed and tested Mr. Hughes, reviewed medical reports, and performed an occupational analysis. Dr. Hankins also wrote Dr. Farrow seeking clarification about lifting, sitting, and standing restrictions and relied on his response in forming his opinion. Dr. Hankins testified that if he only considered Dr. Farrow's restrictions, Mr. Hughes retains a 53%-63% vocational disability. However, coupling Dr. Farrow's restrictions with Mr. Hughes' self-assessment, Dr. Hankins surmised Mr. Hughes is permanently and totally disabled.

Dr. Galloway performed a vocational evaluation at Kennametal's request. He similarly performed an interview and tested Mr. Hughes, reviewed medical reports, and performed an occupational analysis. Dr. Galloway assessed his vocational disability at 50%. However, if he considered Dr. Farrow's response to Dr. Hankins about the additional restrictions, he agreed that Mr. Hughes retains a 53%-63% vocational disability.

## Findings of Fact and Conclusions of Law

At a Compensation Hearing, Mr. Hughes must establish all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2017).

*Permanent Total Disability Benefits*

Mr. Hughes seeks permanent total disability benefits. Tennessee Code Annotated section 50-6-207(4)(B) provides: "When an injury . . . totally incapacitates the employee from working at an occupation that brings the employee an income, the employee shall be considered totally disabled[.]" The assessment of permanent total disability is based on numerous factors, including the employee's skills and training, education, age, local job opportunities, and the capacity to work at the kinds of employment available in the disabled condition. *Roberson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn. 1986). Although a rating of anatomical disability by a medical expert is also one of the relevant factors, "the vocational disability is not restricted to the precise estimate of anatomical disability made by a medical witness." *Henson v. City of Lawrenceburg*, 851 S.W.2d 809, 812 (Tenn. 1993). In addition, the employee's "own assessment of [his] physical condition and resulting disability is competent testimony that should be considered[.]" *McIlvain v. Russell Stover Candies, Inc.*, 996 S.W.2d 179, 183 (Tenn. 1999).

Here, the vocational experts disagreed about the extent of Mr. Hughes' vocational disability. Dr. Hankins stated that he retains a 53% to 63% vocational disability when taking into account his physical capacity and other vocationally relevant factors. He further surmised that Mr. Hughes is totally disabled, considering the subjective factors as well. Dr.

3

Galloway found that Mr. Hughes sustained 50% vocational disability but did not dispute Dr. Hankins' 53%-63% ratings when factoring in Dr. Farrow's response letter about lifting, sitting, and standing. However, he did not find Mr. Hughes totally disabled.

Mr. Hughes believes he is permanently and totally disabled because he would not be a reliable and dependable employee, since he never knows when his condition will confine him to bed rest. However, Dr. Farrow never stated that Mr. Hughes was unable to perform any work at all. While Mr. Hughes testified he attempted to operate a cash register, he acknowledged that he has not sought work since November 1, 2016. In fact, he applied for social security disability benefits. The issue is that Mr. Hughes did not attempt to work anywhere after leaving Kennametal.

The Appeals Board addressed a similar situation in *Duignan v. Stower's Mach. Corp.*, 2018 TN Wrk Comp. App. Bd. LEXIS 25 (May 29, 2018). In *Duignan*, the employee did not seek employment because he "listened to his body" and feared re-injury. The Board held that a finding of permanent total disability would require speculation, since then employee made no effort to determine his options in the open labor market consistent with his restrictions. In further support of its ruling, the Board noted neither medical expert indicated he was unable to work. When considering only the permanent medical restrictions and not his self-assessment, the Appeals Board held the employee was 75% vocationally disabled.

Similarly, although Dr. Farrow did not restrict him from working, Mr. Hughes has not attempted to find work within his restrictions. Additionally, without considering Mr. Hughes' self-assessment, the vocational proof established jobs are available that fit within his restrictions. Therefore, the Court concludes that, while his employment options are *significantly* limited, they are not *totally* limited. The Court holds Mr. Hughes did not establish by a preponderance of the evidence that his lung injury *totally* incapacitated him from working at *any* job that brings an income. Thus, the Court denies Mr. Hughes' claim for permanent total disability benefits.

*Permanent Partial Disability Benefits (PPD)*

The parties stipulated that Mr. Hughes is entitled to permanent partial disability benefits. They agreed his original award equates to $55,042.20 (450 weeks x 20% = 90 weeks x $611.58). The parties further stipulated that Kennametal overpaid temporary total disability (TTD) benefits for 6.5 weeks in the amount of $3,975.27, which should be credited against the PPD award, reducing it to $51,066.93.

After careful consideration of the record as a whole, this Court concludes Mr. Hughes failed to establish by a preponderance of the evidence that he is permanently and totally disabled and is only entitled, at this time, to his original award of $51,066.93.

4

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Hughes is entitled to ongoing medical benefits with Dr. Farrow.

2. The amount of permanent disability benefit is $ $611.58 per week.

3. Under Tennessee Code Annotated section 50-6-207(3), Mr. Hughes is entitled to 450 weeks times his impairment rating, which equates to $$55,042.20, less the TTD overpayment of $3,975.27, for an original award of $51,066.93 in permanent partial disability benefits.

4. Mr. Hughes has until June 19, 2019, to pursue increased benefits and/or extraordinary relief.

5. Mr. Hughes' attorney is entitled to a fee of twenty percent of the permanent partial disability award for a total of $11,008.44, plus reasonable expenses. He may file an application for approval of the proposed fee under Tennessee Code Annotated section 50-5-226.

6. The filing fee for this cause is taxed to Kennametal under Rule 0800-02-21-.07 of the Tennessee Compilation Rules and Regulations.

7. Kennametal shall file a Statistical Data form (SD-2) within ten business days of entry of this Order.

8. Absent an appeal, this Order shall become final thirty calendar days after entry.

**ENTERED July 10, 2018.**

_____
**LISA A. LOWE, JUDGE**
**Court of Workers' Compensation Claims**

5

## APPENDIX

Exhibits:
1) Independent Vocational Evaluation Report of A. Bentley Hankins
2) Vocational Evaluation Report of Michael Galloway
3) Deposition of James Hughes
4) Deposition Transcript of Michael Murphy
5) Deposition Transcript of Eric Ragsdale
6) Deposition Transcript of Jeffrey R. Farrow, M.D. with attached Exhibits
7) Correspondence from Jeffrey R. Farrow, M.D., September 27, November 7, November 17, 2016
8) First Report of Work Injury

Technical record:
1) Petition for Benefit Determination
2) Dispute Certification Notice
3) Request for Expedited Hearing
4) Employer's Motion to Strike Request for Expedited Hearing
5) Order Denying Employer's Motion to Strike Expedited Hearing
6) Pre-Expedited Hearing Statement of Employer
7) Pre-Expedited Hearing Statement of Employee
8) Employee's Notice of Intent to Use Standard Form Medical Report of Treating Physician, Jeff R. Farrow, M.D., instead of Deposition
9) Order
10) Scheduling Hearing Order, October 10, 2017
11) Agreed Order Continuing Compensation Hearing
12) Scheduling Hearing Order, January 31, 2018
13) Joint Pre-Compensation Hearing Statement
14) Initial Joint Stipulation of the Parties
15) Employee's Witness and Exhibit List
16) Pre-Compensation Hearing Brief of the Employer
17) Witness and Exhibit List of the Employer
18) Employer's Notice of Filing Trial Exhibits
19) Employee's Compensation Hearing Brief
20) Employee's Notice of Filing Trial Exhibits
21) Post-ADR Dispute Certification Notice

Stipulated Findings of Facts of the Parties:
1) The date of Mr. Hughes' injury is June 13, 2016.
2) Mr. Hughes gave notice of the injury to Kennametal on June 13, 2016.
3) Mr. Hughes sustained an injury by accident arising primarily out of and in the course and scope of employment with Kennametal.

4) Mr. Hughes is fifty-one years of age and a resident of Washington County.
5) Mr. Hughes has completed the 12th grade and has obtained a high school diploma.
6) Mr. Hughes received authorized medical treatment for the injury with Dr. Jeffrey Farrow.
7) All medical expenses were or will be paid by Kennametal or Sentry Insurance Company.
8) Mr. Hughes reached MMI on September 22, 2016.
9) Mr. Hughes received temporary disability benefits.
10) Temporary total disability benefits were paid from June 14, 2016, to November 6, 2016, in the amount of $12,231.60. There is a 6.5 week TTD overpayment in light of the September 22, 2016 MMI Date. The overpayment is $3,975.27, which should be credited against the PPD award.
11) No temporary partial disability benefits were paid or owed.
12) Mr. Hughes has not returned to work for Kennametal, or any other employer, earning the same or greater wages as Mr. Hughes was earning prior to the injury.
13) Mr. Hughes' average weekly wage is $917.32, which entitles Mr. Hughes to a weekly compensation rate of $611.58.
14) The permanent anatomic impairment rating is 20% to the body as a whole.
15) Value of Initial Compensation (Original Award) is $55,0042.20 (450 weeks x 20%) x $611.58 = 90 weeks x $611.58 = $55,042.20.
16) Maximum value of Permanent Total Disability would equal 884 weeks.
17) Mr. Hughes is entitled to future medical benefits with authorized treating physician, Jeffrey R. Farrow, M.D.
18) The initial compensation period expires on June 19, 2018.

Stipulated Conclusions of Law of the Parties:
1) This claim is governed by the Workers' Compensation Law for the state of Tennessee.
2) An employment relationship existed between Mr. Hughes and Kennametal, Inc. at all relevant times.
3) Mr. Hughes provided proper, statutory notice of the injury.
4) Mr. Hughes filed the Petition for Benefit Determination within the applicable statute of limitations.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on July 10, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Jeffrey C. Taylor, Employee's Attorney | | | X | jeff@taylorlawfirmtn.com |
| Michael L. Haynie, Employer's Attorney | | | X | MHaynie@manierherod.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

8