**FILED**
**Feb 06, 2019**
**10:20 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| YZ STOCKLIN, | ) | Docket No. 2017-08-1014 |
| **Employee,** | ) | |
| v. | ) | |
| BARRETT DISTRIBUTION, | ) | State File No. 59533-2015 |
| **Employer,** | ) | |
| and | ) | |
| AMGUARD INSURANCE CO., | ) | Judge Joshua Davis Baker |
| **Carrier.** | ) | |

## COMPENSATION HEARING ORDER

The Court convened a compensation hearing on January 24, 2019. The main legal issue is whether Mr. Stocklin is permanently and totally disabled. Considering his anatomical impairment, physical limitations and pain, work history, testimony and the local job market, the Court holds Mr. Stocklin is permanently and totally disabled.

### History of Claim

Mr. Stocklin, born October 13, 1959, is a fifty-nine-year-old resident of Shelby County, Tennessee. He graduated high school and has an associate's degree in criminal justice. After graduating, he worked for one year as a prison guard. He applied for a state trooper position but did not get the job. Afterward, Mr. Stocklin worked warehouse jobs and eventually worked for Barrett Manufacturing. He worked for Barrett for fifteen years and was promoted to warehouse manager before suffering a severe injury.

On July 17, 2015, Mr. Stocklin arrived at Barrett early and noticed that the entrance's large metal gate, weighing approximately 2,500 pounds, was only partially opened. He stopped his car to open the gate. As he opened it, the gate support collapsed, and the gate fell on him. Mr. Stocklin suffered near-amputation of his left foot at the ankle and also injured his back and left knee. He immediately went to the hospital for surgery.

Barrett accepted the claim, and several physicians treated Mr. Stocklin. Dr. Francis Camillo diagnosed a low back vertebral fracture and treated him conservatively. Dr. Edward Perez performed two surgeries to Mr. Stocklin's left ankle to treat his open wound and insert hardware to repair his compound fracture. Dr. Frederick Azar diagnosed a posterior cruciate ligament (PCL) tear and performed arthroscopic surgery after conservative treatment failed. In total, his injuries collectively resulted in fourteen-percent whole body impairment.[1]

Dr. Perez and Dr. Azar both restricted Mr. Stocklin to sedentary work. In addition to this restriction, Dr. Perez certified that he could not return to his prior occupation due to the severity of his injury. However, he also stated that Mr. Stocklin "can work in many other things that do not require the physical amount of work relative to his previous job." Dr. Perez placed Mr. Stocklin at maximum medical improvement on April 20, 2017. Mr. Stocklin never returned to Dr. Perez after his release.

Mr. Stocklin testified that the accident continues to cause intense pain requiring medication. He cannot sit or stand for long periods of time and must switch positions often to relieve his pain. He only sleeps about four hours per night, and the pain medication makes him drowsy. Mr. Stocklin described being in a "fog" after taking the medication, which was testimony his wife echoed. Mr. Stocklin stated that when he drove his daughter to school—a trip of only seven miles—he sometimes fell asleep in the car line. For this reason and due to his inability to sit for extended periods, Mr. Stocklin testified he cannot travel.

Mr. Stocklin missed a significant amount of work due to his injuries and received temporary disability benefits during his absence. He earned $1,217.57 per week, resulting in a weekly compensation rate of $730.53.

Two vocational experts, Dr. David Strauser and Mr. David Earl Stewart, evaluated Mr. Stocklin and reached opposite conclusions. Dr. Strauser determined that Mr. Stocklin experienced "a complete loss of earning capacity" because of the accident and could only perform sedentary work. He testified that although Mr. Stocklin has a college education, solid work history, and managerial experience in a warehouse setting, his constant pain in conjunction with his inability to walk without a cane and maintain a seated or standing position for more than a few minutes at a time prohibit him from finding and maintaining a new job. He also said the constant pain would make it hard for him to learn the requirements of a new position.

---

[1] Dr. Perez assigned eight-percent impairment, Dr. Azar assigned one percent, and Dr. Camillo assigned five percent.

Mr. Stewart stated that Mr. Stocklin suffered a forty-six percent vocational disability based on his physical limitations, education and work history. Mr. Stewart did not factor in Mr. Stocklin's complaints of pain, non-prescribed use of a cane, and use of pain medication when reaching his opinion, since he considered these factors too subjective to incorporate into the analysis.

Despite finding that Mr. Stocklin suffered only a forty-six percent vocational disability, Mr. Stewart identified only eleven open positions in the greater Memphis area suitable for Mr. Stocklin. Five of these eleven positions were in the security industry. Dr. Strauser testified that Mr. Stocklin could not maintain any of the identified jobs.

In addition to the positions Mr. Stewart identified, Barrett also engaged Work Finders to seek a position for Mr. Stocklin. Work Finders contacted him in the fall of 2018 to discuss an opportunity as a warehouse manager. Mr. Stocklin said that he received the call without warning and had no idea who Work Finders represented, so he declined.

**Findings of Fact and Conclusions of Law**

Mr. Stocklin must prove all elements of his case by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2018). As the parties agreed, Mr. Stocklin suffered a compensable accident resulting in permanent impairment and has the right to future medical treatment for his injuries.

*Permanent Disability*

The central legal issue is whether he is permanently and totally disabled. The Court finds that he is.

When an injury "totally incapacitates the employee from working at an occupation that brings the employee an income, the employee shall be considered totally disabled[.]" Tenn. Code Ann. § 50-6-207(4)(B). The assessment of permanent total disability is based on numerous factors, including the employee's skills and training, education, age, local job opportunities, and the capacity to work at the kinds of employment available in the disabled condition. *Roberson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn. 1986). Although a rating of anatomical disability by a medical expert is also one of the relevant factors, "the vocational disability is not restricted to the precise estimate of anatomical disability made by a medical witness." *Henson v. City of Lawrenceburg*, 851 S.W.2d 809, 812 (Tenn. 1993). In addition, the employee's "own assessment of [his] physical condition and resulting disability is competent testimony that should be considered[.]" *McIlvain v. Russell Stover Candies, Inc.*, 996 S.W.2d 179, 183 (Tenn.

3

1999).

In considering these factors, the Court holds that Mr. Stocklin cannot find and maintain work to provide income because of his constant pain, physical limitations, age, work history, and the local job market. Mr. Stocklin can neither sit nor stand for more than a short period of time, and he uses a cane to walk. The Court noticed that throughout the hearing, Mr. Stocklin repeatedly switched positions and was in obvious pain. He takes pain medication that makes him drowsy and affects his driving.

While Mr. Stocklin has a college education and extensive work background in warehouse operations and management, the Court finds neither of these factors assistive in gaining employment. He has an associate's degree in criminal justice but worked in the field for only one year as a prison guard, so he has no managerial experience in criminal justice. Additionally, his physical limitations, especially his inability to sit or stand for more than a few minutes, would prevent him from performing law enforcement or security work. Mr. Stocklin could not chase a suspect or protect others or property from harm in his physical condition.

These same physical limitations preclude Mr. Stocklin from further work in warehouse management. While he has extensive experience in this setting, Mr. Stocklin testified that all of these positions still require physical labor. He said that although he supervised others, he still performed general warehouse duties such as packaging and transporting items in the warehouse and driving a forklift when filling in for absent employees. Because he can no longer do any of those tasks, the Court holds he could not find and maintain work as a warehouse manager.

The Court also finds that Mr. Stocklin's age would adversely affect his employment search. Although he has a solid work history and ability to learn new tasks, he is now fifty-nine years old and has been out of the workforce for several years. Plus, as Dr. Strauser stated, his constant pain would inhibit his ability to learn new workplace skills.

The local job market is also not favorable for Mr. Stocklin, as the proof showed very few jobs available in his disabled condition. Dr. Strauser did not provide a labor market analysis after determining Mr. Stocklin could not work. Also, Mr. Stewart could only identify eleven open positions suitable for Mr. Stocklin. Of those eleven positions, five involved security work, which the Court finds he could not perform. Additionally, no proof suggested that Mr. Stocklin could perform the duties of the warehouse management position suggested through Work Finders.

Finally, Mr. Stocklin believes he can no longer work. The Court found him credible. His extensive, unblemished work history leads the Court to believe that Mr.

4

Stocklin would work if he could.

For all these reasons, the Court holds that Mr. Stocklin is permanently and totally disabled. He is, therefore, entitled to weekly benefits from April 21, 2017, the day after MMI,[2] "until [he] is, by age, eligible for full benefits in the Old Age Insurance Benefit Program under the Social Security Act." *See* Tenn. Code Ann. § 50-6-207(4)(A)(i).

*Attorney Fee and Recalculated Award*

Before the Court can award an attorney fee in excess of $10,000, Tennessee Code Annotated section 50-6-226(a)(2)(C) requires specific findings of the factors in Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5, which include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent;
(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
(10)   whether the fee agreement is in writing.

The Court finds this case required significant time and expertise on the part of Mr. Stocklin's counsel. A fee of twenty percent is both statutorily-authorized and customary in cases brought before this Court. Further, the amount is appropriate for successfully shepherding a complicated case through litigation, including detailed medical proof from three physicians and vocational experts. All the applicable factors, including the experience and ability of Mr. Stocklin's attorney, favor the requested fee.[3] Therefore, under Tennessee Code Annotated section 50-6-207(4)(A)(ii)(a) and section 50-6-

---

[2] "Permanent disability benefits, whether total or partial, begin accruing on the date that the employee attains maximum medical improvement." *Smith v. U.S. Pipe & Foundry Co.*, 14 S.W.3d 739, 745 (Tenn. 2000).

[3] Mr. Stocklin's counsel filed an affidavit concerning her fee after conclusion of the trial. The Court also considered the affidavit in making the fee decision.

207(4)(A)(iii), the Court commutes twenty percent of the first 450 weeks of permanent total disability benefits, or $65,747.70, for Mr. Stocklin's attorney fee.

Additionally, Tennessee Code Annotated section 50-6-207(4)(A)(ii)(c) provides:

After the total amount of the commuted lump sum is determined, the amount of the weekly disability benefit shall be recalculated to distribute the total remaining permanent total benefits in equal weekly installments beginning with the date of entry of the order and terminating on the date the employee's disability benefits terminate pursuant to subdivision (4)(A)(i).

Mr. Stocklin will be eligible for full benefits in the Old Age Insurance Benefit Program on August 13, 2026. The period from April 20, 2017, to August 13, 2026, totals 486.14 weeks, which at the compensation rate of $730.53 totals benefits of $355,159.30. Reducing that amount by the attorney fee of $65,747.70 yields an adjusted total benefit of $289,411.60. This amount divided by 486.14 weeks equals an adjusted weekly compensation rate of $595.33. Barrett shall pay Mr. Stocklin's disability benefits at this rate.

**IT IS, THEREFORE, ORDERED** as follows:

1. Barrett shall pay Mr. Stocklin a lump sum of $44,343.11, which is the amount permanent disability benefits accrued from April 21, 2017, to February 1, 2019, minus a credit of $12,105.93 for temporary disability overpayment and advance of permanent disability benefits.

2. Barrett shall continue to make permanent total disability payments to Mr. Stocklin at the rate of $595.33 per week until he becomes eligible for full social security retirement benefits on October 13, 2026.

3. Barrett shall provide Mr. Stocklin with future reasonable and necessary medical treatment for his injuries.

4. The Court further finds Mr. Stocklin's counsel, Monica Rejaei, is entitled to a fee of twenty percent, or $65,747.70, of the permanent total disability award. The Court commutes this portion of the award to a lump sum. Ms. Rejaei may submit a motion for discretionary costs, unless the parties reach an agreement on this issue.

5. Barrett Manufacturing shall pay court costs of $150.00 to the Court Clerk.

6. Barrett Manufacturing shall prepare and submit to the Court Clerk a Statistical Data Form (SD2) within ten business days of this order becoming final.

7. Absent an appeal to the Appeals Board, this order shall become final thirty days after issuance.

**ENTERED ON FEBRUARY 6, 2019.**

_____

**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Dr. Strauser's CV
2. Dr. Strauser's report
3. Dr. Perez's deposition and attachments
4. Dr. Camillo's deposition and attachments
5. Dr. Azar's deposition and attachments
6. Dr. Perez's physician certification form
7. Medical records filed January 10, 2019
8. Photograph
9. Mr. David Earl Stewart's report


Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Scheduling Hearing Order
4. Barrett's Witness and Exhibit List
5. Mr. Stocklin's Witness List
6. Mr. Stocklin's Exhibit List
7. Barrett's Pre-Compensation Hearing Statement
8. Mr. Stocklin's Pre-Compensation Hearing Statement
9. Barrett's Brief
10. Mr. Stocklin's Brief

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on February 6, 2019.

| Name | Certified Mail | First Class Mail | Via Email | Service sent to: |
|------|----------------|------------------|-----------|------------------|
| Monica Rejaei, Employee's Attorney | | | X | mrejaei@nstlaw.com cmcgrath@nstlaw.com |
| Teri Bernal, Employer's Attorney | | | X | tbernal@chartwelllaw.com |

_____

**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# COMPENSATION HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

_____

**Employee**

v.

_____

**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## List of Parties

**Appellant (Requesting Party):**_____At Hearing:☐Employer☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

LB-1103   rev. 10/18                          Page  1 of 2                          RDA 11082

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____At Hearing:☐Employer☐Employee

Appellee's Address: _____

Appellee's Phone: _____Email:_____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

### *\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____ , certify that I have forwarded a true and exact copy of this Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___ .

[Signature of appellant or attorney for appellant]    _____

Attention: This form should only be used when filing an appeal to the Workers' Compensation Appeals Board. If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by the Court which can be found on their website at the following address: http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____ 2. Address: _____

3. Telephone Number: _____ 4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)                                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental  $ _____ per month

Groceries     $ _____ per month     Telephone     $ _____ per month

Electricity     $ _____ per month     School Supplies $ _____ per month

Water     $ _____ per month     Clothing     $ _____ per month

Gas     $ _____ per month     Child Care     $ _____ per month

Transportation   $ _____ per month     Child Support   $ _____ per month

Car     $_____ per month

Other     $ _____ per month (describe: _____ )

10. Assets:

Automobile     $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House     $ _____     (FMV) _____

Other     $ _____     Describe:_____

11. My debts are:

Amount Owed          To Whom

_____     _____

_____     _____

_____     _____

_____     _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                      RDA 11082