**FILED**

**August 1, 2018**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 3:05 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **ROBERT DUMAS,** | ) | **Docket No. 2016-08-1353** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | |
| **REPUBLIC SERVICES,** | ) | **State File No. 58564-2014** |
| **Employer,** | ) | |
| **And** | ) | |
| **OLD REPUBLIC INSURANCE,** | ) | **Judge Deana C. Seymour** |
| **Insurer.** | ) | |

## COMPENSATION HEARING ORDER

The parties agreed that Robert Dumas sustained a compensable right-shoulder injury at Republic Services (Republic) on July 31, 2014, but they disputed the extent of his permanent disability. The Court heard the issue at a Compensation Hearing on June 29, 2018, and holds Mr. Dumas is entitled to permanent total disability benefits (PTD).

### History of Claim

Mr. Dumas worked as a trash collector for Republic. On July 31, he grabbed a large tree limb and felt a pop in his right shoulder, followed by severe pain. Republic provided Mr. Dumas a panel of physicians from which he chose Dr. Thomas Giel.

Dr. Giel surgically repaired three rotator cuff tendons, reattached a biceps tendon, and removed excess bone (a distal clavicle excision) in the shoulder to reduce pain. However, Mr. Dumas's pain and stiffness persisted.

Dr. Giel ordered an MRI and EMG. The MRI revealed intact rotator cuff tendons, a degenerative labrum tear and inflammation. The EMG was normal. Dr. Giel prescribed a month of physical and aqua therapy.

Despite therapy, his pain and stiffness continued, so Dr. Giel opted to manipulate Mr. Dumas's shoulder under anesthesia to remove scar tissue and improve range of motion. The manipulation was unsuccessful. Having exhausted treatment options, Dr.

1

Giel ordered a functional capacity evaluation that revealed Mr. Dumas did not give a full and consistent effort.

Dr. Giel released Mr. Dumas at maximum medical improvement on August 20, 2015, and assessed a six-percent permanent impairment to the body as a whole for only the distal clavicle excision. He deferred to the doctors who later saw him to determine his range of motion. Dr. Giel permanently restricted Mr. Dumas from lifting over twenty pounds with an additional two pounds above the shoulder lifting restriction. Dr. Giel certified he could not return to his prior job as a trash collector due to his permanent restrictions. He encouraged Mr. Dumas to seek a second opinion.

Mr. Dumas asked Republic for a second opinion, and it provided one with Dr. Jay Saenz on August 11, 2016. Dr. Saenz found stiffness, crepitus, and atrophy of Mr. Dumas's right shoulder. He also stated that his diabetes increased his risk of more severe permanent stiffness and scar tissue formation. Dr. Saenz determined Mr. Dumas's work injury left him with "significant dysfunction" and pain. He commended Dr. Giel on his treatment and advised against additional surgery. Dr. Saenz recommended restricting Mr. Dumas from lifting over ten pounds and from performing repetitive overhead activity.

Three years after the accident, Dr. Apurva Dalal independently evaluated Mr. Dumas at the request of his counsel. He diagnosed significant loss of right-shoulder motion with severe arthritis and adhesive capsulitis. Dr. Dalal determined only a reverse shoulder joint replacement might correct the problems. Because the injury included numerous damaged tendons, Dr. Dalal believed rating the distal clavicle excision alone was insufficient. Rather, he considered the loss of range of motion and assessed a fourteen percent permanent impairment to the body as a whole under the AMA Guides.[1] He thought Mr. Dumas re-tore a rotator cuff tendon and the labrum but did no objective tests to verify. Dr. Dalal noted he also began experiencing left-shoulder pain.

Afterward, Mr. Dumas retained Dr. Saenz for an impairment rating evaluation. He found Mr. Dumas had persistent pain, atrophy, and substantial dysfunction in his shoulder. Dr. Saenz used range-of-motion measurements to calculate permanent impairment, since a "rotator cuff tear complicated by adhesive capsulitis is not a specific diagnosis" under the AMA Guides. Based on loss of motion, Dr. Saenz assessed a ten-percent permanent impairment to the body as a whole. He recommended a ten-pound lifting restriction with no overhead activity. Dr. Saenz also certified that Mr. Dumas could not perform his pre-injury occupation due to the permanent restrictions.

Both parties presented vocational proof. Mr. Dumas offered Dr. C. Greg Cates's vocational assessment that he retained a ninety-five percent vocational impairment. Dr.

---

[1] "'AMA guides' means the 6th edition of the American Medical Association Guides to the Evaluation of Permanent Impairment." Tenn. Code Ann. § 50-6-102(2) (2017). Tennessee law requires physicians use the guides to determine the degree of anatomical impairment sustained by an employee. Tenn. Code Ann. § 50-6-204(k)(1).

Cates described this rating as "textbook." He explained that in the "real world," Mr. Dumas could not sustain gainful employment. He based his opinion on his age, lack of transferrable skills, manual unskilled labor history, and the significant restrictions Dr. Saenz placed on his physical activities. Achievement testing placed him well below average in math and with an overall reading composite score below average. Dr. Cates explained that, in his opinion, employers are unwilling to invest in training older workers with physical limitations.

Republic presented vocational expert Michael Galloway to counter Dr. Cates. Mr. Galloway reviewed the available records and interviewed Mr. Dumas to determine jobs available for him within his restrictions. Though he did not assign a vocational impairment rating, he did not dispute Dr. Cates's "textbook" ninety-five percent vocational impairment rating. Mr. Galloway differed regarding the realistic availability of jobs for Mr. Dumas. He could drive, attend to his daily hygiene, as well as stand and walk without assisted devices. He agreed with Dr. Cates that Mr. Dumas was limited to sedentary, unskilled jobs and was unable to operate a computer. Mr. Galloway's numbers were based on job types but not on realistic job openings in the area.

Mr. Dumas testified he was sixty-one years old and worked in heavy labor throughout his adult life. He wrote with his left hand but primarily used his right hand for all other activities before this accident. At Republic, he lifted up to 100 pounds with both hands, picked up and pushed brush, and operated a truck lever at neck level. Mr. Dumas's work injury and resulting restrictions prevented him from continuing that work, and Republic terminated him on October 31, 2014. Mr. Dumas previously drove a truck for a steel company, which required him to throw chains to secure his load. He could no longer perform that type of work. He could not pass the physical requirements to maintain his commercial driver's license. Although Mr. Dumas graduated from high school, he had difficulty with math, reading, and writing.[2] He never used a computer and could not type. He demonstrated in Court his inability to lift his right arm above his waist. Mr. Dumas's weakness and lack of motion made it difficult for him to scratch his back and shave. His pain hindered his ability to sleep. Mr. Dumas could not perform yard work. He watched television and kept an eye on his grandchildren during the day. Mr. Dumas enjoyed working but believed he could not physically perform any work.[3]

*Contested Issues*

The parties disagreed on the extent of Mr. Dumas's permanent medical impairment and vocational disability. Dr. Giel testified that Mr. Dumas's torn rotator cuff was the primary injury, but he did not consider any malady apart from the distal clavicle resection in assessing an impairment rating. He specifically did not include range-of-motion impairment. Mr. Dumas contended Dr. Saenz was his ATP and properly based his

---

[2] The Court observed Mr. Dumas struggle to read a statement he wrote detailing his work injury.
[3] Mr. Dumas receives social security disability.

3

ten-percent impairment rating on loss of active range of motion measured with a goniometer under the AMA Guides. Therefore, Mr. Dumas maintained the Court should presume Dr. Saenz's rating to be correct. Coupled with Dr. Dalal's fourteen-percent rating and the vocational evidence of Dr. Cates, Mr. Dumas contended he was permanently and totally disabled. He alternatively argued he was entitled to up to 275 weeks of permanent partial disability benefits based on the ten-percent anatomical rating of his ATP, Dr. Saenz.

Republic countered that Dr. Giel was the ATP, and the Court must presume that his six-percent impairment rating was correct. Republic contended that neither Drs. Saenz nor Dalal overcame the presumption of correctness attached to Dr. Giel's opinion. Thus, Mr. Dumas was entitled to 43.74 weeks of permanent partial disability benefits based on Dr. Giel's six-percent rating plus additional benefits for the enhancing factors of no return to work and being over forty years of age. Republic further argued that Mr. Dumas did not meet the criteria for 275 weeks of permanent partial disability benefits because his ATP did not rate him at ten percent or more.

Finally, Republic argued Mr. Dumas was not permanently and totally disabled. It relied on its vocational expert, Mr. Galloway, who testified Mr. Dumas was not permanently and totally disabled based on his medical records and interview.

## Findings of Fact and Conclusions of Law

### Standard Applied

Mr. Dumas must establish all elements of his claim by a preponderance of the evidence at a Compensation Hearing. Tenn. Code Ann. § 50-6-239(c)(6) (2017).

### Permanent Medical Impairment

Tennessee law provides that all permanent impairment ratings shall be assigned by the treating physician under the applicable edition of the AMA Guides. Tenn. Code Ann. § 50-6-204(k)(1) and (2)(A). The permanent impairment rating shall be presumed correct unless it is rebutted by a preponderance of the evidence. *Id.* at (k)(7).

Here, the Court is presented with conflicting medical opinions regarding the appropriate impairment rating. Dr. Giel was Mr. Dumas's ATP, and the Court presumes his six-percent rating is correct.

Dr. Giel based the six-percent rating on one component of his surgical repair of Mr. Dumas's shoulder injury – the distal clavicle excision. He did not consider his loss of motion in calculating the rating. Dr. Giel admitted he was unaware and did not follow the

4

corrections and clarifications of the AMA Guides that disallowed rating the distal clavicle excision if it were incidental to the rotator cuff repair.

In contrast, both IME physicians explained the flaws in Dr. Giel's impairment rating. Both correctly utilized the AMA Guides and measured Mr. Dumas's range of motion to assess his permanent impairment ratings.

The Court holds, by a preponderance of the evidence, Dr. Saenz's opinions and testimony rebutted the presumption of correctness afforded Dr. Giel. Dr. Saenz provided a surgical and diagnostic second opinion after Dr. Giel completed treatment. About a year later, he evaluated Mr. Dumas to assess his permanent impairment. Dr. Saenz determined that his most significant impairment involved loss of motion. He followed the AMA Guides and based his permanent impairment rating on motion measurements. Accordingly, the Court concludes Mr. Dumas sustained a ten-percent permanent impairment to the body as a whole.

*Permanent Total Disability*

The Court next analyzes whether Mr. Dumas is entitled to PTD. Tennessee law provides that, "[w]hen an injury not otherwise specifically provided for in this chapter totally incapacitates the employee from working at an occupation that brings the employee an income, the employee shall be considered totally disabled[.]" Tenn. Code Ann. § 50-6-207(4)(B). The assessment of permanent total disability is based on numerous factors, including the employee's skills and training, education, age, local job opportunities, and the capacity to work at the kinds of employment available in the disabled condition. *Roberson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn. 1986). Although a rating of anatomical disability by a medical expert is one of the relevant factors, "the vocational disability is not restricted to the precise estimate of anatomical disability made by a medical witness." *Henson v. City of Lawrenceburg*, 851 S.W.2d 809, 812 (Tenn. 1993). In addition, the employee's "own assessment of [his] physical condition and resulting disability is competent testimony that should be considered[.]" *McIlvain v. Russell Stover Candies, Inc.*, 996 S.W.2d 179, 183 (Tenn. 1999).

Mr. Dumas gave a bleak picture of his physical condition and earning ability. Republic fired him because it could not accommodate his physical restrictions. He was sixty-one years old with a heavy manual labor work history. Mr. Dumas could not type and knew nothing about operating a computer. He experienced constant pain that interfered with his ability to sleep at night and required frequent naps during the day. Mr. Dumas had no transferrable skills.[4] He had not worked since his injury. Mr. Dumas inquired about a job, but it required heavy lifting, so he never applied. Mr. Dumas did not believe he could work at any job because of his significant restrictions and pain.

---

[4] Mr. Dumas is unable to renew the commercial driver's license he has had since high school.

Regarding expert proof, the Court finds Dr. Cates and Mr. Galloway equally qualified. Both relied on Mr. Dumas's medical records, physical restrictions, and a personal interview. Dr. Cates first explained that he was ninety-five percent vocationally impaired. He questioned Mr. Dumas's ability to be retrained because of his age and low achievement test scores. Dr. Cates explained that he derived the ninety-five percent impairment by applying the restrictions to textbook statistics. He clarified the difference between a vocational impairment rating and a "real world" determination. In the real world, employers are unwilling to hire older employees with substantial physical restrictions, limited education, and no transferrable skills. Dr. Cates concluded Mr. Dumas could not realistically sustain gainful employment.

Mr. Galloway testified that Mr. Dumas was not permanently and totally disabled. He did not assess a vocational impairment rating but took no issue with Dr. Cates' ninety-five percent rating. Mr. Galloway testified Mr. Dumas could drive (automatic transmission), stand, walk, see and hear. He could perform sedentary, unskilled jobs that did not involve computer use. Mr. Galloway's numbers were based on job types but not on realistic job openings in the area.

The Court holds Mr. Dumas is permanently and totally disabled, based on the totality of the evidence and accepting Dr. Cates's opinion that he is unable to find and sustain gainful employment in his disabled condition. Therefore, he is entitled to permanent total disability benefits from his MMI date of August 20, 2015, "until [he] is, by age, eligible for full benefits in the Old Age Insurance Benefit Program under the Social Security Act." *See* Tenn. Code Ann. § 50-6-207(4)(A)(i).

**IT IS, THEREFORE, ORDERED as follows:**

1. Republic shall continue to provide Mr. Dumas with medical treatment for his work injuries under Tennessee Code Annotated section 50-6-204. Dr. Giel will remain the authorized treating physician.

2. Republic shall pay Mr. Dumas a lump sum of $77,813.19, representing 154 weeks of benefits ($102,420.78) minus its stipulated credit of $24,607.59, for accrued PTD benefits from August 15, 2015, to the date of the issuance of this Order.[5]

3. Republic shall pay ongoing PTD benefits on a weekly basis at the rate of $665.07 per week until Mr. Dumas is eligible for full Old Age Social Security retirement benefits.

---

[5] The parties stipulated to a weekly compensation rate of $665.07 based on an average weekly wage of $996.74. They further stipulated that Republic is entitled to a credit of $24,607.54 against the judgment for permanent disability benefits.

4. Counsel for Employee may file a motion for attorney fees and expenses.

5. Republic shall prepare and file a statistical data form SD2 within ten business days of the date of this order under Tennessee Code Annotated section 50-6-244.

6. The filing fee for this cause is taxed to Republic under Rule 0800-02-21-.07 (May 2018) of the Tennessee Compilation Rules and Regulations.

7. Absent an appeal of this order by either party, the order shall become final thirty days after issuance.

**ENTERED AUGUST 1, 2018.**


**JUDGE DEANA C. SEYMOUR**
**Court of Workers' Compensation Claims**


## APPENDIX

Exhibits:
1. Collective exhibit of medical records filed by Employer on March 14, 2018
2. Deposition transcript of Mr. Robert Dumas
3. Deposition transcript of Dr. Thomas Giel, III
4. Deposition transcript of Dr. Apurva Dalal
5. Deposition transcript of Dr. Jay Saenz
6. Form C-32 Standard Form Medical Report for Industrial Injuries prepared by Dr. Jay Saenz
7. Form C-41 Wage Statement
8. Form C-42 Agreement Between Employer/Employee Choice of Physician
9. C. Greg Cates, Ed.D.'s Vocational Report
10. Michael Galloway's Vocational Report
11. Employee's Job Description
12. Excerpts from the AMA Guidelines to the Evaluation of Permanent Impairment
13. Printout of Temporary Total Disability benefits paid to Employee
14. Mr. Dumas's timesheets

7

15. Email from R. Scott Vincent dated August 11, 2016
16. Mr. Dumas's Written Statement
17. May 2, 2018 Deposition transcript of Dr. Thomas Giel, III
18. May 17, 2018 Deposition transcript of Dr. Jay Saenz
19. Curriculum Vitae of Dr. Greg C. Cates
20. Curriculum Vitae of Michael Galloway

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Scheduling Order
4. Amended Scheduling Order
5. Employer's Objection to Dr. Jay Saenz's Standard Form Medical Report for Industrial Injuries (Form C-32)
6. Employer's Motion for Partial Summary Judgment
7. Employer's Memorandum of Law in Support of its Motion for Partial Summary Judgment
8. Employer's Statement of Undisputed Facts in Support of its Motion for Partial Summary Judgment
9. Employer's Motion in Limine to Exclude Dr. Jay Saenz' C-32, or, in the alternative Objection to the C-32
10. Employee's Memorandum in Response to Employer's Motion for Partial Summary Judgment
11. Employee's Response to Employer's Statement of Undisputed Facts in Support of its Motion for Partial Summary Judgment
12. Employee's Response to Employer's Motion in Limine to Exclude Dr. Jay Saenz's C-32, or, in the Alternative Objection to the C-32
13. Order on Motion in Limine to Exclude Dr. Jay Saenz's C-32, or, in the Alternative Objection to the C-32; Employee's Motion to Strike Untimely Filed Motion in Limine; and Employer's Motion to Strike Employee's Response to Motion in Limine
14. Employee's Exhibit List
15. Employee's Witness List
16. Employer's Pre-Compensation Hearing Statement
17. Employer's Pre-Compensation Hearing Brief
18. Order on Employer's Motion for Partial Summary Judgment
19. Dispute Certification Notice, including Additional Issues raised by Employer (February 2, 2018)
20. Employee's Position Statement
21. Employee's Supplemental Position Statement
22. Employer's Motion to Strike and Exclude Portions of Dr. Jay Saenz' Deposition Testimony from May 17, 2018, as well as to Exclude Dr. Saenz' Physician Certification Form Pursuant to Tenn. Code Ann. § 50-6-242(a)(2)(B)

8

23. Employer's Motion to Strike and Exclude Portions of Dr. Thomas Giel's Deposition Testimony from May 2, 2018, as well as to Exclude Dr. Giel's Physician Certification Form Pursuant to Tenn. Code Ann. § 50-6-242(a)(2)(B)
24. Employee's Combined Response to Employer's Motion to Strike and Exclude Portions of Dr. Thomas Giel's and Dr. Jay Saenz' Deposition Testimony and to Exclude Doctors Giel's Physician Certification Forms and Plaintiff's Motion to Allow Admission of Doctors Testimony
25. Employer's Reply to Employee's Combined Response to Employer's Motion to Strike and Exclude Portions of Dr. Thomas Giel's and Dr. Jay Saenz' Deposition Testimony as well as to Exclude Dr. Giel and Dr. Saenz' Physician Certification Forms Pursuant to Tenn. Code Ann. § 50-6-242(a)(2)(B)
26. Order on Motions to Strike and Exclude Portions of Dr. Thomas Giel's Deposition Testimony from May 2, 2018 and Dr. Saenz' Deposition Testimony from May 17, 2018 as well as to Exclude Drs. Giel and Saenz' Physician Certification Forms Pursuant to Tenn. Code Ann. § 50-6-242(a)(2)(B)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this August 1, 2018.

| Name | Via Email | Email Address |
|---|---|---|
| Stephen Libby, Employee's Attorney | X | steve@lnlawmemphis.com |
| Steve Snyder, Employer's Attorney | X | scott.vincent@mgclaw.com <br> steve.snyder@mgclaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9