

FILED

December 11, 2018

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 12:09 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **KENNETH FUQUA,** | ) | **Docket No. 2017-06-1717** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | **State File No. 64741-2015** |
| **PIKE ELECTRIC,** | ) | |
| **Employer,** | ) | |
| **and** | ) | **Judge Joshua D. Baker** |
| **LIBERTY MUTUAL INS. CO.,** | ) | |
| **Carrier.** | ) | |

## COMPENSATION HEARING ORDER FOR
## PERMANENT PARTIAL DISABILIY BENEFITS

The Court convened a compensation hearing on October 24, 2018. The only issue was whether Mr. Fuqua is permanently partially or totally disabled. For the reasons below, the Court finds that he is permanently partially disabled.

### History of Claim

The parties stipulated to the following pertinent facts:

- Mr. Fuqua sustained an injury by accident on August 5, 2015, that arose primarily out of and in the course and scope of his employment with Pike.
- He notified Pike of his injury on August 14, 2015.
- Mr. Fuqua is a sixty-one year-old resident of Robertson County and has a high school diploma.
- He received authorized medical treatment and Pike paid for all treatment.
- Pike paid all temporary disability benefits due Mr. Fuqua.
- He has not returned to work for Pike due to his medical condition.

*Lay Testimony and Medical Treatment*

Mr. Fuqua worked in the electrical utility business for thirty years in a range of different positions. It was a family occupation, as he and eight other family members worked in the same industry. He started out as an "operator," which entailed driving trucks, hauling equipment, and setting poles. He then worked his way up to a "journeyman lineman," which allowed him to work on power lines. A few years later, he advanced to "working foreman," a position he held until his injury. Any training he received occurred almost exclusively on the job. Further, because Mr. Fuqua was not "certified" as an electrical lineman—he was grandfathered in before the licensing requirement—he could not leave Pike to work as lineman for another electrical utility.

Outside of electrical utility work, Mr. Fuqua has experience operating heavy equipment but little work experience beyond that. He also previously held a commercial drivers' license.

On August 5, 2015, Mr. Fuqua felt a "pop" in his left shoulder while loading a "pole rack" onto his work truck. An MRI revealed a "massive" left-shoulder rotator cuff tear, and Dr. Allen Anderson recommended surgery.[1] He performed a synovectomy.

Afterward, Mr. Fuqua began physical therapy, and his pain improved somewhat. However, his range of motion limitation and weakness reappeared, so Dr. Allen Anderson referred him to Dr. Christian Anderson for a superior capsular reconstruction.

Dr. Anderson found that Mr. Fuqua's shoulder still had "severe dysfunction." According to his notes, Mr. Fuqua said he could not lift his arm and was unable to work. After surgery and several months of therapy, he placed Mr. Fuqua at maximum medical improvement on March 28, 2017, with a four-percent whole-body impairment rating.

As part of his recovery Mr. Fuqua participated in a functional capacity evaluation (FCE), which determined a functional ability between sedentary and medium. The FCE provided recommendations for activity limitations, and Dr. Anderson imposed permanent restrictions consistent with the recommendations. He did not believe Mr. Fuqua could return to his previous job considering his shoulder condition.

Mr. Fuqua testified that it hurt to perform the tasks required by the FCE and he would not be able to perform them "as a job." Mr. Fuqua believed he could not continue his work as a foreman with his injury. He also felt that he could not work construction or at a factory. He also had a hard time driving because of arm pain and could not drive for

---

[1] The two operating physicians share the same last name. For brevity and to avoid confusion, the Court referred to Dr. Allen Anderson by his full name. All other references to "Dr. Anderson" mean Dr. Christian Anderson.

more than five to ten minutes.  In addition, he felt his arm pain prevented him from driving a truck commercially because he could not use the "three-point method" to enter the truck.

Mr. Fuqua said he looked for work by asking people whom he knows such as friends and family about job opportunities, but he found none.  He admitted he did not fill out any job applications.  He acknowledged he could perform some internet searches but had not searched for jobs through that medium.

Mr. Fuqua said his shoulder hurts daily and the pain makes sleeping difficult.  He has difficulty reaching and placing items such as a gallon of milk, or pouring coffee from a pot.  He can no longer swim or ride his motorcycle.  He has trouble putting on his belt.  He also has problems washing his back and the back of his head, tying his boots, mowing the yard, hanging clothes on a line, and grocery shopping.  Despite his problems, Mr. Fuqua said he wants to go back to work.

*Vocational Experts' Testimony*

Both parties presented testimony from vocational experts.  John McKinney testified first on Mr. Fuqua's behalf and used the FCE results to form his opinion.  He considered Mr. Fuqua's very low bilateral dexterity as noted on the FCE a significant factor in determining his vocational ability.  He also cited the waist-level carrying restriction as the most important because workers generally perform most lifting and carrying activities at waist level rather than below the waist or overhead.

In addition to physical vocational ability, Mr. McKinney also assessed Mr. Fuqua's mental capabilities by administering the Slossen Intelligence Test.  The average score on the test is 90-110.  Mr. Fuqua scored a 77, which was in the eighth percentile for his age group and fell in the "borderline" category for intellectual function.  Mr. McKinny also used the wide range achievement test, and Mr. Fuqua scored 4.5-grade equivalent in reading, 4.4 in spelling, and 6.8 in math.

By combining Mr. Fuqua's physical limitations, mental capability, and work experience, Mr. McKinney determined he could not perform 84 percent of the jobs in the greater Nashville area labor market.

In addition to the loss of job access, Mr. McKinney considered other factors to determine Mr. Fuqua's overall vocational impairment.  Several "negative employment factors" were his age, poor reading and writing abilities, time out of the labor market, continuing pain, and "appearance of disability" due to the guarded manner with which he held his arm.  Mr. McKinney testified that these factors would make it difficult for Mr. Fuqua to find and maintain employment.  Thus, Mr. McKinney testified he could only perform light to sedentary work and was 100 percent vocationally disabled.  On cross

examination, however, Mr. McKinney admitted that he could never know whether Mr. Fuqua could obtain employment unless he applied for a job.

Michelle McBroom Weiss testified for Pike. She considered the work restrictions specifically identified by Dr. Anderson when forming her opinion, as well as his performance on intelligence and achievement tests. Ms. Weiss administered the fifth edition of the wide range achievement test and found that Mr. Fuqua had abilities in reading and language that fell below the eighth-grade level, along with math scores of an eighth grader. She also administered the Slossen test, and he scored an 83, six points higher than the results Mr. McKinney recorded.

Ms. Weiss said Mr. McKinney inappropriately considered subjective criteria in assigning Mr. Fuqua 100-percent vocational disability, such as complaints of pain. She said vocational evaluators generally are not trained to consider complaints of pain when forming opinions.

Ms. Weiss also did not factor the indicated deficit in fine motor skills, which produced no work restrictions, in forming her opinion. She stated she had to go by the physician's restrictions when evaluating an FCE and also stated, "For me try to interpret an FCE . . . and restrict him further would be outside of [my] expertise, and it would also be outside my code of ethics." She believed considering those factors, as well as other negative employment factors considered by Mr. McKineey, inserted subjectivity into the vocational disability determination.

Ms. Weiss admitted that Mr. Fuqua's age could be a barrier to employment. She stated further that age discrimination is "not supposed to happen," so there is no way to quantify the effect age would have on the loss of job access. Ms. Weiss, however, testified she considered age when determining probable wage loss and vocational potential. Ms. Weiss further admitted that, because Mr. Fuqua would be starting a new career, his disability could affect his vocational potential, i.e. his ability to obtain a job. Despite this recognition, she did not factor this into her vocational disability opinion. Ms. Weiss did, however, cite Mr. Fuqua's failure to apply for jobs as a factor when forming her opinion.

Ms. Weiss said she looked at both medium and light categories of work when determining the number of available jobs in Mr. Fuqua's area and averaged the number of medium intensity jobs with those of light intensity. This yielded a loss of access to 65 percent of jobs in the local labor market. She also factored in his probable loss of income using an hourly wage of $10.00, which would be 68 percent less than his prior weekly salary of more than $1,200.00. Weighing all these factors, Mr. Weiss found Mr. Fuqua suffered 67-percent vocational disability from the workplace accident.

**Findings of Fact and Conclusions of Law**

At a compensation hearing, Mr. Fuqua must establish that he is entitled to benefits by a preponderance of the evidence. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2018). He has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015).

*Permanent Total Disability Benefits*

Mr. Fuqua seeks permanent total disability benefits. "When an injury . . . totally incapacitates the employee from working at an occupation that brings the employee an income, the employee shall be considered totally disabled[.]" Tenn. Code Ann. § 50-6-207(4)(B). The assessment of permanent total disability is based on numerous factors, including the employee's skills and training, education, age, local job opportunities, and the capacity to work at the kinds of employment available in the disabled condition. *Roberson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn. 1986). Although a rating of anatomical disability by a medical expert is also one of the relevant factors, "the vocational disability is not restricted to the precise estimate of anatomical disability made by a medical witness." *Henson v. City of Lawrenceburg*, 851 S.W.2d 809, 812 (Tenn. 1993). In addition, the employee's "own assessment of his or her overall physical condition, including the ability or inability to return to gainful employment, is competent testimony that should be considered[.]" *Duignan v. Stowers Mach. Corp.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 25, at *11 (May 29, 2018).

Here, the vocational experts disagreed about the extent of Mr. Fuqua's vocational disability. Mr. McKinney stated that, while he calculated his loss of access to work at 84 percent, he determined Mr. Fuqua to be 100-percent vocationally disabled when taking into account his physical capacity and other vocationally relevant factors such as age, appearance of disability, continuing pain, reading and writing skills, and time outside the labor market. Ms. Weiss determined Mr. Fuqua suffered 67-percent vocational disability but retained the ability to work.

Mr. Fuqua demonstrated he had some serious physical limitations with the left side of his body. While he has a high school education, his intelligence and test scores showed mathematical and reading comprehension levels well below those of a high school graduate. And, even though he had a commercial driver's license, he testified that due to his shoulder, he could not drive long distances or get into a truck.

An additional concern is Mr. Fuqua's job search. Mr. Fuqua testified he asked several friends and family members about work. While he did not specify the type, the Court understood him to mean work in the electrical utility business. While it makes sense that Mr. Fuqua would look to the only industry he knows, the search seems futile,

as Dr. Anderson said he cannot do this type of work anymore. Aside from this search, Mr. Fuqua did not apply for any other type of work.

The Appeals Board addressed a similar situation in *Duignan,* where a sixty-one-year-old employee retired after suffering a work injury. He did not seek employment because he "listened to his body" and feared re-injury. The employee chose to retire despite the employer's offer of accommodated work. The Board held that a finding of permanent total disability would require speculation, since the employee made no effort to determine his options in the open labor market consistent with his restrictions. Additionally, the Board noted no doctor indicated he was unable to work. *Id.* at *13-14.

The Court finds this situation similar to *Duignan.* Although Dr. Anderson said Mr. Fuqua could not do his previous job, he did not say he could not work at all. Additionally, Mr. Fuqua made little effort to find work. While he asked friends and relatives about work, he did not fill out any applications. Mr. McKinney and Ms. Weiss agreed that no one knew if he could get a job if he did not apply for one. Therefore, the Court concludes that Mr. Fuqua did not establish by a preponderance of the evidence that his shoulder injury *totally* incapacitated him from working at *any* job that brings an income. Thus, the Court denies Mr. Fuqua's claim for permanent total disability benefits.

*Permanent Partial Disability Benefits*

Mr. Fuqua and Pike agreed to a weekly compensation rate of $805.85. Mr. Fuqua suffered a four-percent permanent medical impairment from his injury, entitling him to eighteen weeks of benefits, resulting in an original award of $14,505.30. Additionally, because he did not return to work and is more than forty years old, his original award is increased by factors of 1.35 and 1.2, for a total award of $23,498.55.

The Court recognizes the vast difference between the potential awards for permanent partial versus permanent total disability in this case. While the disparity is great, the law does not provide for a middle ground for fashioning an award that falls somewhere between these two extremes under the facts of this case.

**IT IS, THEREFORE, ORDERED** as follows:

1. Pike shall provide Mr. Fuqua with ongoing medical treatment for his work-related left-shoulder injury with Dr. Christian Anderson as the authorized treating physician.

2. Mr. Fuqua is entitled to permanent partial disability benefits for a four-percent permanent partial disability in the amount of $23,498.55, which equals twenty-nine weeks and one day of benefits at his compensation rate of $805.85.

3. Costs of $150.00 are assessed against Pike Electric under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2017), for which execution may issue as necessary.

4. Pike shall prepare and submit a Statistical Data Form (SD2) within ten business days of this order becoming final.

5. Absent an appeal, the order shall become final thirty days after issuance.

**ENTERED ON DECEMBER 11, 2018.**


_____
**Judge Joshua D. Baker**
**Court of Workers' Compensation Claims**

7

# APPENDIX

Exhibits:

1. Medical Records
2. Deposition of Dr. Christian Anderson
3. Curriculum Vitae of John W. McKinney, III
4. Table of FCE Restrictions
5. Employee's Rule 26 Disclosure of John W. McKinney, III
6. Curriculum Vitae of Michelle McBroom Weiss
7. Vocational Evaluation Report of Michelle McBroom Weiss
8. October 10, 2018 Supplemental Note to Michelle McBroom Weiss's Vocational Evaluation Report

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice filed October 20, 2017
3. Dispute Certification Notice filed September 25, 2018
4. Request for Scheduling Hearing
5. Scheduling Order
6. Employee's Witness and Exhibit List
7. Employer's Witness and Exhibit List
8. Employer's Pre-Compensation Hearing Statement
9. Employee's Pre-Compensation Hearing Statement
10. Employer's Pre-Trial Brief

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on December 11, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Brian Dunigan, Employee's Attorney | | | X | brian@poncelaw.com; andrew@poncelaw.com |
| David Hooper, Employer's Attorney | | | X | dhooper@hooperzinn.com; rlanglin@hooperzinn.com |

_____
**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**