**FILED**
**Feb 19, 2026**
**11:01 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **DERRICK HANDS,** | ) | **Docket No. 2020-08-0199** |
| **Employee,** | ) | |
| **v.** | ) | |
| **FRESENIUS MEDICAL CARE** | ) | |
| **HOLDINGS, INC.,** | ) | |
| **Employer,** | ) | **State File No. 91566-2018** |
| **And** | ) | |
| **AMERICAN CASUALTY COMPANY** | ) | |
| **OF READING, PA,** | ) | |
| **Carrier,** | ) | |
| **And** | ) | **Judge Shaterra R. Marion** |
| **TROY HALEY, as** | ) | |
| **ADMINISTRATOR of the BUREAU** | ) | |
| **OF WORKERS' COMPENSATION,** | ) | |
| **SUBSEQUENT INJURY AND** | ) | |
| **VOCATIONAL RECOVERY FUND.** | ) | |

## COMPENSATION ORDER

The Court held a Compensation Hearing on February 5, 2026, on Mr. Hands's entitlement to medical and permanent disability benefits for his knee and back injuries.[1] Mr. Hands argued that his injuries (knee and back) arose primarily out of and in the course and scope of his employment and that he is permanently and totally disabled. Fresenius and the Subsequent Injury Fund argued the knee did, but the back did not, and the disability is only partial.

The Court finds that Mr. Hands's knee and back injuries arose primarily out of and in the course and scope of his employment, and he is partially disabled.

---

[1] The parties agreed to the compensability, future medical, and permanent benefits for his knee injury.

## History of Claim

Mr. Hands fell at work on November 12, 2018. He hurt his knee and back and selected Dr. Frederick Wolf from a panel.

Dr. Wolf primarily treated Mr. Hands's knee injury; but at his first visit he noted Mr. Hands suffered "new and fresh" back pain radiating into his buttocks. An x-ray showed "chronic findings," but Dr. Wolf noted that Mr. Hands "had this injury and now he has a lot of symptoms. He's very symptomatic."

Dr. Wolf ordered injections for Mr. Hands's back, and when those did not relieve his symptoms, Dr. Wolf referred Mr. Hands to orthopedic spine surgeon Dr. Spencer Hauser. Dr. Wolf deferred to Dr. Hauser on causation for the back injury.

Dr. Wolf placed Mr. Hands at maximum medical improvement for his knee, assigned a 1% impairment, and released him with no restrictions.

Dr. Hauser took x-rays, including standing lumbar flexion-extension x-rays, and an MRI. He found back pain radiating down Mr. Hands's legs with extension and straight leg raise. He testified that the MRI showed evidence of nerve root compression and he recommended lumbar fusion surgery.

Fresenius sent Mr. Hands to Dr. John Brophy, a neurosurgeon, for a second opinion on surgery. Dr. Brophy did not relate the back pain to the work injury, based on a lack of anatomical change and the presence of a preexisting chronic back condition.

Dr. Brophy testified that he did not "specifically recall" reviewing Dr. Hauser's records before reaching his conclusion. Rather, he based his opinion on his independent review of the MRI and his in-person examination. If lumbar flexion-extension x-rays showed evidence of motion, then the lumbar fusion surgery would probably help.

Mr. Hands continued to see Dr. Hauser for unauthorized treatment including the lumbar fusion surgery. The surgery helped at first, but the back pain did not go away. Physical therapy and pain management did not help either. Dr. Hauser ordered a CT scan and a new MRI. He discussed a spinal cord stimulator and possible revision surgery. Mr. Hands opted for the stimulator, which also did not help.

Dr. Hauser testified at a November 10, 2023 deposition that Mr. Hands was probably at maximum medical improvement but needed an examination. That examination took place on December 6, and Dr. Hauser assigned a 12% impairment rating at an October 4, 2024 deposition. He agreed with Dr. Brophy that the MRIs showed no evidence of an acute injury. However, he related Mr. Hands's back injury to his work injury because "he had no prior history of any back or radiating leg pain prior to this injury." He placed no

permanent restrictions.

Fresenius also sent Mr. Hands to Dr. Samuel Murrell, an orthopedic surgeon, for an employer's exam. Like Dr. Brophy, Dr. Murrell concluded that the back pain is not related to the work injury. He related the back pain to an underlying degenerative condition.

Dr. Murrell testified Mr. Hands suffered a lumbar strain and he "would have expected that to resolve within six to 12 weeks if not sooner." He also stated that he "can't really explain" what might have caused his ongoing complaints of back pain.

Mr. Hands testified that he has not returned to work since his injury and does not believe he can do any job. His past work experience includes working as a cook and a delivery driver. He called his boss and told him that he could not work anymore.

### Findings of Fact and Conclusions of Law

*Motion in Limine*

Shortly before the compensation hearing, Mr. Hands renewed a motion in limine to exclude utilization review documents attached as an exhibit to Dr. Hauser's deposition. Fresenius opposed the motion. In an order after the original motion, the Court reserved final ruling until the compensation hearing. At the compensation hearing, the Court ruled that exhibit three of Dr. Hauser's deposition was admissible. However, after reconsideration, the exhibit is excluded.

At his deposition, Dr. Hauser testified that the utilization review records are kept as part of the ordinary course of business in his office. He recognized them and agreed that the statements were made for the purposes of medical diagnosis and treatment. However, Rule 803(6) requires the conditions to be shown by the custodian of the record or a qualified witness. Dr. Hauser had no duty to record or transmit the utilization review record nor is he the custodian.

Mr. Hands's motion to exclude exhibit three to Dr. Hauser's deposition is granted.

*Causation*

At this Compensation Hearing, Mr. Hands must prove all elements of his case by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2025). He must show that his back pain arose primarily out of and in the course and scope of his employment. *Id.* § 50-6-102(12).

Mr. Hands relied on Dr. Hauser's opinion that the injury, need for medical treatment, and permanent disability were all related to the work incident. Fresenius relied

on Drs. Brophy and Murrell, who found that the injury was not work-related and the medical treatment was not medically necessary. Dr. Brophy stated that the lumbar fusion would probably help if a flexion extension x-ray showed motion, but he was unaware that the x-ray took place and did show motion.

Dr. Hauser is not entitled to a presumption of correctness on causation, as he was a direct referral from Dr. Wolf and not a panel-selected physician. *Id.* § 50-6-102(12)(E); *Gilbert v. United Parcel Serv.,* 2019 TN Wrk. Comp. App. Bd. LEXIS 20, at *13 (June 7, 2019). However, his opinion on medical necessity is presumed correct. *Id.* § 50-6-204(a)(3)(H).

When faced with conflicting medical testimony, the Court must use its discretion in deciding which opinion contains the more probable explanation. *Sanker v. Nacarato Trucks, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016).

An injury is defined as "causing death, disability, or the need for medical treatment." *Id.* § 50-6-102(12). A preexisting condition made symptomatic by a work injury may be compensable "if there is a progression or aggravation of the condition that causes disabling pain." *Blevins v. S. Champion Tray, LP,* 2019 TN Wrk. Comp. App. Bd. LEXIS 29, at *14 (July 11, 2019).

Further, an aggravation injury could cause the need for medical treatment without an anatomical change. *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC 2025 Tenn. LEXIS 514, at *26 (Tenn. 2025). An "aggravation means an intensification or worsening of a preexisting disease, condition or ailment, permanent or not, that contributes more than fifty percent in causing death, disability or the need for medical treatment." *Id.*

All physicians acknowledged that Mr. Hands had a degenerative preexisting aspect to his injury. Drs. Murrell and Brophy believed that his preexisting aspect primarily caused Mr. Hands's current injury rather than the work accident. However, that does not end the analysis.

Dr. Hauser's opinion is supported by Mr. Hands's testimony and the initial medical records. Medical proof is not to be "read and evaluated in a vacuum" but instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991).

The record contains no evidence that Mr. Hands suffered from radiating back pain before the work injury. Dr. Hauser interpreted the first medical records to note "new and fresh" pain. Mr. Hands testified he did not have back problems before the work injury, and now he does. He is credible. On this point, he was unwavering, honest, and succinct in his

testimony. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility).

Dr. Hauser treated Mr. Hands over the course of months, including performing the lumbar fusion surgery. "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991). Dr. Hauser's opinion offers the more probable explanation for Mr. Hands's back injury.

Therefore, the Court finds he suffered a permanent intensification or worsening of a preexisting condition that contributed more than 50% in causing the need for medical treatment. Mr. Hands has shown by a preponderance of the evidence that his back pain arose primarily out of his work.

*Extent of Permanent Disability*

Mr. Hands seeks permanent and total disability benefits. To prevail on his claim that he is permanently and totally disabled, Mr. Hands must show he is "totally incapacitated from working at an occupation that brings [him] an income," meaning he is unable to work at *any* job in the open labor market. Tenn. Code Ann. § 50-6-207(4)(B); *Duignan v. Stowers Mach. Corp.*, No. E2018-01120-SC-R3-WC, 2019 Tenn. LEXIS 224, at *21 (Tenn. Workers' Comp. Panel June 19, 2019). The permanent and total disability assessment is based upon numerous factors, including the employee's skills and training, education, age, local job opportunities, and capacity to work at the kinds of employment available in his disabled condition. *Id.* at *21-22.

Although a rating of anatomical disability by a medical expert is also one of the relevant factors, "the vocational disability is not restricted to the precise estimate of anatomical disability made by a medical witness." *Henson v. City of Lawrenceburg*, 851 S.W.2d 809, 812 (Tenn. 1993). In addition, the employee's own "assessment of his physical condition and resulting disabilities is competent testimony and cannot be disregarded[.]" *Duignan,* 2019 Tenn. LEXIS 224 at *22.

To support his permanent and total disability claim, Mr. Hands relied only on his own testimony on his vocational disability. However, he gave no testimony on local job opportunities or his capacity to work at the kinds of employment available. Additionally, no doctor assigned any permanent restrictions. Considering the lack of proof, the Court cannot conclude that he has shown by a preponderance of the evidence that he is permanently and totally disabled. This claim is denied.

The Court must then determine Mr. Hand's entitlement to permanent partial disability benefits. If an employee is permanently partially disabled, he shall be paid 66

and 2/3% of his average weekly wages for the period of compensation, which is determined by multiplying the employee's impairment rating by 450 weeks. Tenn. Code Ann. § 50-6-207(3)(A). Based on Dr. Wolf's 1% and Dr. Hauser's 12% impairment ratings, Mr. Hands is entitled to an initial award of 58.5 weeks at the compensation rate of $846.47 for a total of $49,518.50.

For increased permanent partial disability benefits, 58.5 weeks have passed, and the compensation period has expired.[2] Mr. Hands testified that he could not return to his job due to his injuries. He is entitled to increased benefits for his back as well due to not working when his compensation period expired. *Id.* § 50-6-207(3)(B). Mr. Hands is also entitled to the multipliers of 1.35 for not returning to work at a wage equal to or greater than the wage he received before his injury, and 1.2 because he is over age 40, for a total of $30,701.47 in increased benefits. *Id.* § 50-6-207(3)(B)(ii).

*Medical Benefits*

An employer must furnish medical treatment at no cost to the employee. *Id.* § 50-6-204(a)(1)(A). Therefore, Fresenius shall furnish reasonable, necessary, and related medical treatment.

As to who shall provide this treatment, the Appeals Board held that "[a]n employer who denies liability for a compensable injury is in no position to insist upon the statutory provisions respecting the choosing of physicians" when determining if an employee may continue treating with his unauthorized physician. *Hagan v. Potomac Corp.*, 2022 TN Wrk. Comp. App. Bd. LEXIS 5, at *10 (Feb. 9, 2022). A relevant consideration is "whether the employee established a doctor/patient relationship with a physician of the employee's choice following the employer's denial of the claim." *Id.*

Here, Mr. Hands clearly established a doctor/patient relationship with Dr. Hauser over months of treatment. Therefore, the Court designates Dr. Hauser as the authorized treating physician for his back injury. Dr. Wolf remains the authorized treating physician for his knee injury.

Further, Dr. Hauser testified that his medical bills, treatment and the corresponding pain management at Mays and Schnapp were related to the work injury and were reasonable and necessary. Therefore, Fresenius shall pay Mr. Hands's medical bills incurred with Dr. Hauser and the pain management he referred to under the fee schedule.

---

[2] This is true whether the Court considers the maximum medical improvement date to be November 10, 2023, the date of Dr. Hauser's first deposition, or December 6, the date of the follow-up examination.

**IT IS THEREFORE ORDERED** as follows:

1. Mr. Hands's request for permanent and total disability is denied.

2. Mr. Hands's request for permanent partial disability for his back and knee injuries is granted. Fresenius shall pay $49,518.50 total. His attorney is entitled to a fee of 20% of this award.

3. Mr. Hands's request for increased benefits is granted. Fresenius shall pay $30,701.47. His attorney is entitled to a fee of 20% of this award.

4. Fresenius shall pay Mr. Hands's unauthorized medical bills with Dr. Hauser and pain management under the fee schedule. His attorney is entitled to a fee of 20% of this award. *Bowlin v. Servall, LLC,* No. W2020-01708-SC-R3-WC, 2021 Tenn. LEXIS 532, at *11-12 (Tenn. Workers' Comp. Panel Aug. 13, 2021).

5. Fresenius shall continue to provide medical treatment with Dr. Hauser for the back injury and Dr. Wolf for the knee injury for any reasonable, necessary, and work-related condition under Tennessee Code Annotated section 50-6-204.

6. Mr. Hands may file a motion seeking costs under Rule 54.04.

7. Fresenius shall pay the $150.00 filing fee under Tennessee Compilation Rules and Regulations 0800-02-21-.06 within five days of entry of this order.

8. Fresenius shall file an SD-2 within ten days of this order becoming final.

9. Unless appealed, this order shall become final 30 days after entry.

**ENTERED February 19, 2026.**

_____
**Judge Shaterra R. Marion**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1) Deposition of Dr. Frederick Wolf, with Attachments
2) C-32 of Dr. Wolf
3) First Deposition of Dr. Spencer Hauser, dated November 10, 2023
4) Second Deposition of Dr. Hauser, dated October 4, 2024
5) Third Deposition of Dr. Hauser, dated October 17, 2025
6) Deposition of Dr. Samuel Murrell
7) Deposition of Dr. John Brophy
8) Settlement documents from previous workers' compensation injury

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on February 19, 2026.

| Name | Email | Email Address |
|------|-------|---------------|
| Andrew Wener, Employee's Attorney | X | awener@wenerlawfirm.com<br>skramer@wenerlawfirm.com |
| Brent Moore, Employer's Attorney | X | bmoore@ortalekelley.com |
| Timothy Kellum, SIF Attorney | X | timothy.kellum@tn.gov |

_____

**Penny Patterson-Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation

www.tn.gov/workforce/injuries-at-work/

wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____       ☐ Motion Order filed on _____

☐ Compensation Order filed on_____       ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____
*Attach an additional sheet for each additional Appellee *

<u>**CERTIFICATE OF SERVICE**</u>

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*